**H. J. FAGOT, Plaintiff,**

v.

**The FLINTKOTE COMPANY, Defendant.**

**Civ. A. No. 68–2268.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 1, 1969.

R. M. Mathews, New Orleans, La., for plaintiff.

J. Thomas Lewis, New Orleans, La., for defendant.

RUBIN, District Judge.

This is a private action for damages brought against the Flintkote Company by a former employee, who charges he was fired for assisting in the prosecution of a claim against it brought under the Fair Labor Standards Act (FLSA).[1] If the charge is true, the discharge would violate section 15(a) (3) of the FLSA, 29 U.S.C.A. § 215(a) (3), which makes it "unlawful for any person * * * to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." Flintkote contends that this section may not be enforced by the injured employee acting on his own behalf, and moves for judgment on the pleadings for failure to state a claim on which relief may be granted.

Hubbard J. Fagot, for 25 years an employee of Flintkote, was discharged from his position as Traffic Manager for the Southern Division, allegedly for giving testimony in a dispute between the Company and the drivers under his supervision. Fagot was at that time over 63 years old and within 19 months of retirement; he asserts that, as the result of this discharge, he lost his severance pay, part of his pension, and his company life and health insurance, as well as the salary he would have earned during the period. Flintkote, correctly citing a number of decisions,[2] takes the position that Fagot cannot sue to recover those losses, but must look to the Secretary of Labor to assert any claim.

The primary purpose of the FLSA was to insure a minimum scale of wages, together with overtime pay for weekly hours in excess of 40, among a broad class of employees.[3] Congress found that competition tended to encourage substandard compensation of workers, to the detriment of interstate commerce; the Act was passed to eliminate such unacceptable conditions "without substantially curtailing employment or earning power," 29 U.S.C.A. § 202. A broad range of powers was given to the Secretary of Labor to enable him to police employers' performance under the Act,[4] and employees cooperating with the enforcement effort were afforded special protection from employer reprisal

1. The Fair Labor Standards Act, as amended, may be found at 29 U.S.C.A. §§ 201–219.

   This court has granted partial summary judgment for defendant on plaintiff's alternative claim, that he was discharged because of his age, in violation of 29 U.S.C.A. § 623.

2. Powell v. Washington Post Co., 105 U.S. App.D.C. 374, 267 F.2d 651, *cert. denied*, 360 U.S. 930, 79 S.Ct. 1449, 3 L.Ed.2d 1544, 1959; Bonner v. Elizabeth Arden, Inc., 2 Cir. 1947, 177 F.2d 703; Bowe v. Judson C. Burns, Inc., 3 Cir. 1943, 137 F.2d 37; Britton v. Grace Line, Inc., S.D.N.Y.1962, 214 F.Supp. 295.

3. *See, e. g.*, United States v. Darby, 1941, 312 U.S. 100, 109, 61 S.Ct. 451, 455, 85 L.Ed. 609: the purpose of the Act "is to exclude from interstate commerce goods produced for the commerce * * *

under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being."

4. A special Wage and Hour Division is created in the Labor Department, and the Administrator and the Secretary may make periodic investigations and reports, both to keep the law up to date and to detect violations; they may compel the attendance of witnesses and the production of records; the facilities of the U.S. Labor Department and state Departments of Labor are available to them; they may require employers to keep records and may regulate industrial homework; they may determine exemptions from certain provisions, and the Secretary may sue to restrain violations and, to a limited extent, to recover unpaid benefits on behalf of the employees, 29 U.S.C.A. §§ 204, 209, 211, 213, 214, 216.

by section 15(a) (3).[5] Plaintiff here is within the broader class of employees working in interstate commerce for whose benefit the FLSA was enacted, as well as the more specific class for whom the guarantee in section 15(a) (3) was intended.

Conceding that section 15(a) (3) protects employees claiming their substantive rights under the FLSA, Flintkote maintains that the Act's failure expressly to set forth a private right to sue after a violation of that section leaves the authority to enforce this ancillary safeguard solely in the hands of government agencies. Section 16(a), 29 U.S.C.A. § 216(a), prescribes criminal sanctions for violation of section 15, and section 11(a), 29 U.S.C.A. § 211(a), provides that "the Secretary of Labor shall bring all actions under section 217 of this title to restrain violations of this chapter;"[6] section 17, 29 U.S.C.A. § 217, in turn confers jurisdiction on the district courts "to restrain violations of section 215 of this title." Plaintiff does not dispute the Secretary's dominion over injunction suits or the unavailability of that form of equitable relief to employees suing individually. In this case Fagot does not seek "to restrain violation," but rather to obtain redress at law for a particular past violation. The district court's power to entertain such an action depends not on section 17 of the FLSA, but on the general "federal question" jurisdiction bestowed by 28 U.S. C.A. § 1331.[7]

Where the Congress creates a right by legislation, the federal courts have a duty to implement the statutory intent by providing the appropriate remedy.[8] Realizing that "where federally protected rights [are] invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief,"[9] numerous courts have ruled that effective implementation of a law prohibiting certain behavior includes recognition of a civil cause of action on the part of persons injured by the proscribed conduct.[10] The general theoretical basis for inferring a right to sue where the statute is silent rests on the conviction that the protection given those persons for whose benefit the statute was enacted would be incomplete if it could be enforced only by criminal sanctions or by injunction obtained to protect the State's interests.[11]

---

5. In fact, immunizing employees who aid the enforcement effort is one direct way of working to improve labor standards "without * * * curtailing employment."

6. That section exempts actions brought under § 12, relating to "oppressive child labor," where the Secretary may only sue to restrain violations "subject to the direction and control of the Attorney General," 29 U.S.C.A. § 212(b).

7. Because plaintiff's asserted damages are well in excess of $10,000, and any claim that he has indisputably "arises under the Constitution, laws, or treaties of the United States," this court's jurisdiction to recognize a cause of action, and to try the case should a cause of action exist, is not questioned. Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939.

8. "It is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose," J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423.

9. Bell v. Hood, 1946, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939.

10. See, e. g., Deckert v. Independence Shares Corp., 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189, and cases cited at notes 18–23.

11. This approach, sometimes characterized as the "crime-tort" doctrine (although the prohibited conduct giving rise to liability need not be criminal), was first espoused in the federal courts in Texas & Pac. Ry. v. Rigsby, 1916, 241 U.S. 33, 36 S.Ct. 482, 484, 60 L.Ed. 874, a suit under the Federal Safety Appliance Act. The Supreme Court declared:

"[D]isregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the

The significance of the right freely to claim the benefits of the FLSA is obvious, if the Act is to have real force in setting the limits below which competition cannot drive working conditions.[12] Although the question of private civil liability for unlawful discharge under section 15(a) (3) has been litigated several times, the Fifth Circuit has never passed on the issue, and the opinions to which Flintkote points are not persuasive.

In some of the cases the prayer for damages was secondary to and joined with a demand for reinstatement.[13] It is apparent that, in these instances, the courts considered back pay to be part of the overall equitable relief held to be improperly sought, and rejected the whole claim as encroaching on the Secretary of Labor's exclusive authority over injunctive enforcement. Where reinstatement and restitution were both requested, the Supreme Court also viewed the suit as essentially equitable, and therefore permitted the Secretary to press for both after a wrongful discharge under section 15, Mitchell v. Robert De Mario Jewelry Inc., 1960, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323.

■ Moreover, although the cases supporting Flintkote's position do analyze the purposeful reservation of equitable remedies to the Secretary, their dismissal of the employees' potential legal cause of action is perfunctory.[14] It is an axiom of statutory interpretation that the purpose of a law furnishes the best guide to its application. It is no longer meet, if ever it was, to attempt to construe a statute by the literal reading of its words, as if the statute were a tape measure to set beside a length of cloth. Statutes "should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them." [15]

■ Clearly section 15(a) (3) was designed to encourage employees to claim their rights under the FLSA by ensuring their job security regardless of legal action taken against their employer under the Act.[16] Compensating the in-

damages from the party in default is implied * * *."
See Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963); O'Neil, Public Regulation and Private Rights of Action, 54 Calif.L.Rev. 231 (1964); Katz, The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in Bell v. Hood, 117 U.Pa.L.Rev. 1, esp. pp. 31–33 (1968).

12. In Mitchell v. Robert De Mario Jewelry, Inc., 1960, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323, Justice Harlan explains that, rather than enforcing the FLSA through continuous inspection and government surveillance, Congress "chose to rely on information and complaints received from employees * * *. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances."

13. Bowe, supra, n. 2, concerns a prayer solely for injunctive relief, reinstatement of union membership; Powell and Britton, supra, n. 2, were combined claims, Miss Powell seeking, in addition, an injunction against the Secretary of Labor commanding him to investigate the Company.

14. For example, the per curiam opinion in Powell v. Washington Post Co., 1959, 105 U.S.App.D.C. 374, 267 F.2d 651, 652, does not go beyond declaring "[T]he Fair Labor Standards Act makes no provision for a civil action by an employee to recover damages for discharge in violation of the Act or for reinstatement."
In Bonner v. Elizabeth Arden, Inc., 2 Cir. 1947, 177 F.2d 703, 705, the court's whole analysis of the problem of civil damages consists of the unquestioned, but irrelevant, statement that "the Fair Labor Standards Act * * * confers no jurisdiction upon the court over a civil action to recover damages for the discharge of an employee in violation of the statute."

15. Judge Learned Hand, in Lehigh Valley Coal Co. v. Yensavage, 2 Cir. 1914, 218 F. 547, 553.

16. The force of the public interest in protecting an employee who seeks to assert rights against his employer under a federal statute was again demonstrated in Pettway v. American Cast Iron Pipe Co.,

jured party directly conforms to the statutory policy by making whole one who, by Congressional declaration should never have been injured originally. In addition, permitting a party protected by a statute to recover damages for invasion of that protection is a well-recognized supplemental method of inducing compliance, an object wholly consonant with the policy of the FLSA.[17]

On its face, the FLSA does not set forth a private remedy for breach of section 15(a)(3). But mere silence is not decisive: where other statutes were similarly silent as to any private relief, courts have found a cause of action to exist—for violation, for example, of the Securities Exchange Act,[18] National Banking Act,[19] Federal Communications Act,[20] National Labor Relations Act,[21] Federal Aviation Act,[22] and the Rivers and Harbors Act.[23]

While the FLSA does not expressly provide for any compensation to the individual damaged by violation of section 15, in Mitchell v. Robert De Mario Jewelry Inc., 1960, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323, the Supreme Court noted the gap in enforcement that would result if monetary redress were unavailable. Finding that an aggrieved employee would have "little more than a Hobson's choice" if no compensation for discriminatory discharge were available, since "restitution of partial deficiencies in wages due for past work [would be] perhaps obtainable only at the cost of irremediable entire loss of pay for an unpredictable period," 361 U.S. at 293, 80 S.Ct. at 336, the Court permitted lost wages to be included in the equitable relief sought by the Secretary.

This interpretation of the scope of the remedy available when the Secretary chooses to act does not eliminate the need for a private remedy, as this case in fact demonstrates, nor does it foreclose the recognition of one.[24] The ma-

---

5 Cir. 1969, 411 F.2d 998. The Fifth Circuit there held that allegations made under Title VII of the 1964 Civil Rights Act, were privileged and the employer had no right to fire the charging employee, though the complaint may have contained false or malicious material. Pointing out that the Labor Acts are not determinative in interpreting the Civil Rights Act, the court declared that, nevertheless, all three Acts demonstrate "that protection must be afforded to those who seek the benefit of statutes designed by Congress to equalize employer and employee in matters of employment," 411 F.2d at 1006.

17. The purpose of the minimum wage law could only be effected through forcing all competitors—or as many as possible—to adhere to the same standards of compensation for employees. Attempts at state regulation had failed, as industrial concerns beyond the state's jurisdiction could compete with lower costs by cutting wages. A national act was called for upon the Congressional finding that "the channels and instrumentalities of commerce [were] used to spread and perpetuate [substandard] labor conditions among the workers of the several States," 29 U.S.C.A. § 202(a). In this context, the need for thorough enforcement is obvious.

18. J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423; Deckert v. Independence Shares Corp., 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Fratt v. Robinson, 9 Cir. 1953, 203 F.2d 627, 37 A.L.R.2d 636; Fischman v. Raytheon Mfg. Co., 2 Cir. 1951, 188 F.2d 783; Baird v. Franklin, 2 Cir. 1944, 141 F.2d 238, 240–247 (Judge Clark, dissenting in part but writing for the court on this issue).

19. Deitrick v. Greaney, 1940, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694, rehearing denied, 309 U.S. 697, 60 S.Ct. 611, 84 L. Ed. 1036.

20. Reitmeister v. Reitmeister, 2 Cir. 1947, 162 F.2d 691.

21. Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187.

22. Fitzgerald v. Pan American World Airways, 2 Cir. 1956, 229 F.2d 499; Wills v. Trans World Airlines, Inc., S.D.Cal. 1961, 200 F.Supp. 360.

23. United States v. Perma Paving, 2 Cir. 1964, 332 F.2d 754.

24. It would be ironic as well as mistaken to reverse the common law rule and suggest that the existence of an equitable remedy precludes assertion of a right at law. See Katz, op. cit. supra, n. 11.

jority in *De Mario* expressly refused to decide that "the Act did not contemplate the private vindication of rights it bestowed," *id.*; the dissent reinforced its argument that damages for back pay were beyond the reach of sections 11 and 17 by stating, "[A] wrongfully discharged employee may maintain in his own right an action at law, triable by a jury, under either § 16(b) or the common law * * * to recover wages lost by the employee as a result of his wrongful discharge," 361 U.S. at 303, 80 S.Ct. at 341. *De Mario* is significant for the instant case primarily because it reflects the view of the entire Court that an employee wrongfully discharged under the FLSA should be compensated in money for the damage he has suffered.

Although a private civil remedy would not conflict with the policy of the Act, before the sentiment of *De Mario* can be carried further to allow the employee to recover on his own it must be clear that permitting such suits would not interfere with the statutory scheme. The FLSA is not a regulatory law delegating broad discretionary responsibilities to a specialized administrative agency charged with governing an industry or a phase of commercial relations. Instead, it bestows a series of

rights on a broad class of employees, and arms the Secretary of Labor with extensive power to help the employees enforce those rights.

The provision for injunctive relief permits the Secretary to invoke the flexible powers of the court of equity to reshape the labor policy of a plant; this comes closest to regulation in the public interest. Such relief was functionally distinguished from a private damage award in Wirtz v. Jones, 5 Cir. 1965, 340 F.2d 901, 904, where the court denied the Secretary's demand for a jury trial on the issue of compensation for unpaid minimum wages, pointing out:

> [T]he purpose of the injunction to restrain the withholding of wages due is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest.[25]

A private suit simply to collect damages for a past violation would not interfere with the Department of Labor's enforcement efforts under the FLSA, nor would it present questions requiring administrative expertise that could not be decided by a court of law.[26] De-

25. The difference between restitution granted as part of an equity decree and civil damages was elucidated in Porter v. Warner Holding Co., 1946, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, a suit under the Emergency Price Control Act. In a situation very similar to Mitchell v. De Mario, *supra*, the Administrator of the Office of Price Administration requested refund of rent overcharges as part of a suit to compel future compliance. The Administrator was authorized only to seek injunctive relief, although the Act provided a triple-damage action for aggrieved purchasers and tenants and a damage action for the United States. The Court permitted restitution to be awarded as part of the equitable relief, characterizing the equity court as "act[ing] primarily to effectuate the policy of the * * * Act and to protect the public interest while giving necessary respect to the private

interests involved," 328 U.S. at 400, 66 S.Ct. at 1090.

26. In Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co., 1951, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, a purchaser of power sued the utility company for charging unreasonable rates in violation of the Federal Power Act. The Court held that determination of the reasonableness of rates filed with the Federal Power Commission was a matter solely for the Commission, and a court could therefore not award damages that it did not have the authority to compute. T.I.M.E., Inc. v. United States, 1959, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed. 952, concerned a similar situation under the Motor Carrier Act, the Court finding that reasonableness of rates was a question reserved for the Interstate Commerce Commission. Compare Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 1962, 371 U.S. 84, 83 S.Ct.

fendant cannot oppose Fagot's recovery by suggesting Congress did not wish to burden employers with suits brought by workers illegally discharged; such a premise draws no support from the Act, and, since *De Mario*, the employer must be prepared to make monetary restitution under threat of injunction. Far from complicating the Secretary's exercise of authority under the FLSA, permitting employees to sue for damages on their own frees him from responsibility for cases of minimal public importance, such as the one at bar.

■ Flintkote, however, attempts to demonstrate that the failure to provide an explicit private cause of action for wrongful discharge was deliberate, and emphasizes the specific creation of a right to recover unpaid minimum wages or overtime compensation, § 16 (b), 29 U.S.C.A. § 216(b). Inferences drawn from Congressional silence are rarely useful, and frequently wrong. The "intention of Congress" must be deduced from the legislative product— from the language that was constitutionally enacted into law. The overriding aim of the FLSA is to secure to those employees covered the benefits of a major Congressional economic policy decision, that competition in interstate commerce cannot be fueled by exploitative wage practices. Powerful enforcement provisions were enacted to protect the fair labor standards set by the law, and to assure the employees' receipt of these guaranteed minimums. Section 15(a) (3) is one of the provisions included to reinforce the substantive rights that were the main focus of Congressional attention, as, indeed, is the grant of standing to the Secretary of Labor to represent employees who might be afraid or unprepared to act in their own behalf.[27]

Moreover, section 16(b) does not just permit employees to sue at law to recover withheld benefits; it creates a custom-designed cause of action, complete with automatic class representation if desired, liquidated damages and attorneys' fees, and the possibility of termination should the Secretary of Labor take action on the same controversy. Because the law does not also construct an intricate private remedy for violation of the protections of 15(a) (3) does not mean the law contemplates no private remedy at all. *Expressio unius exclusio alterius* is only an interpretive rule of thumb; one illustration of its limitations is the equally axiomatic rule of *ejusdem generis*. Neither Latin formula is helpful when what is included in the law is as qualitatively different from what is left unsaid as the statutory remedy under 16(b) is from the general right to sue at law for damages caused by an invasion of a federal right, under 28 U.S.C.A. § 1331.[28]

157, 9 L.Ed.2d 142, where the shipper was permitted to recover for the carrier's unreasonable choice of the longest route.

For the distinction between permitting private remedies to interfere with a regulatory scheme and recognizing a simple right to sue, with a discussion of the former, see O'Neil, Public Regulation and Private Rights of Action, 52 Calif. L.Rev. 231 (1964).

27. For example, in the legislative history of the 1961 amendments to the FLSA it is clear that Congress felt representative action by the Secretary was necessary "since many employees who have not been paid in compliance with the act are hesitant about requesting legal action against their employers," S.Rept. No. 145, 87th Cong., 1st Sess., 1961, 1961 U.S.Code Cong. & Admin.News, pp. 1620, 1658. Those amendments gave the Secretary a limited right to take the initiative in suing to recover unpaid minimum wages and overtime compensation.

28. The Securities Exchange Act similarly provides special private remedies for violation of some of its sections and is silent as to liability for violation of others. Courts allowing recovery for violations of the latter have pointed out the special characteristics of the statutory remedies, which supplement but do not displace common law rights. See the opinion of Judge Clark, Baird v. Franklin, 2 Cir. 1944, 141 F.2d 238, 245. The Securities Exchange Act does contain a saving clause, preserving all remedies previously existing. The FLSA, of course, has no saving clause, as there

Therefore, finding no real grounds for denying plaintiff the opportunity to vindicate his rights under the Fair Labor Standards Act, and finding substantial reasons for permitting him to try, this court must deny the motion for judgment on the pleadings.

was no analogous right or remedy before the Act was passed; after its passage, however, it is fully enforceable by the federal courts utilizing their general common law jurisdiction as well as the specific jurisdiction bestowed by § 17.