John H. STEWART, Appellant,

v.

The TRAVELERS CORPORATION et al.,
Appellees.

No. 72-2457.

United States Court of Appeals,
Ninth Circuit.

Sept. 9, 1974.

Hunsdon Cary Stewart (argued), Los Angeles, Cal., for appellant.

Kenneth W. Anderson (argued), of Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellees.

## OPINION

Before DUNIWAY and HUFSTED-LER, Circuit Judges, and KING,* District Judge.

SAMUEL P. KING, District Judge:

Appellant, Stewart, was discharged by The Travelers Insurance Company on January 15, 1971. Stewart subsequently complained to the United States Department of Labor that his dismissal violated 15 U.S.C. § 1674(a) which forbids the discharge of an employee due to the garnishment of his wages for one

indebtedness.[1] When the Department of Labor refused to take action on his claim, Appellant filed a complaint in the district court for the Central District of California. Although private civil remedies are not expressly authorized for § 1674(a) violations,[2] Stewart requested as relief reinstatement, backpay, punitive damages, and attorney's fees. Judge Gray found that Congress did not intend such private actions for civil relief to be available under § 1674, and dismissed the complaint. On appeal from that ruling, this court must decide whether private civil remedies may be implied for § 1674(a) violations. We hold that such remedies must be implied; and accordingly, we reverse the district court's dismissal of Stewart's complaint.

■■ Private civil remedies for violations of federal statutes have been implied,[3] even when criminal sanctions and administrative enforcement are expressly authorized.[4] In Burke v. Com-

---

* The Honorable Samuel P. King, United States District Judge, for the District of Hawaii, sitting by designation.

1. This case arises under Subchapter II (§§ 1671–1677, "Restrictions on Garnishment") of the Consumer Credit Protection Act of 1968, 15 U.S.C.A. §§ 1601–1681 (Supp. I, 1974) (hereinafter "the Act"). § 1674(a) provides: "No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." § 1674(b) authorizes criminal penalties for violations of subsection (a). Under § 1676, the Secretary of Labor, acting through t'.e Wage and Hour Division of the Department of Labor, is charged with the duty of enforcing Subchapter II.

2. While nowhere in Subchapter II of the Consumer Credit Protection Act are private civil remedies expressly authorized, § 1640 contains detailed private civil relief for violations under Subchapter I of the Act.

3. See, e. g., Wyandotte Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) (allowing U. S. government to sue); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S. Ct. 1555, 12 L.Ed.2d 423 (1964); Moses v. Burgin, 445 F.2d 369 (1st Cir.), cert. denied, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971); Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir.

1969); Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961); Matheson v. Armbrust, 284 F.2d 670 (9th Cir. 1960). See generally, Farmland Industries, Inc. v. Kansas-Nebraska Natural Gas Co., Inc., 349 F.Supp. 670, 678 n. 1 (D.Neb.1972); A. Katz, The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in Bell v. Hood, 117 U.Penn.L.Rev. 1 (1968); Symposium, Private Rig'.ts From Federal Statutes: Toward a Rational Use of Borak, 63 N.W.U.L.Rev. 454 (1968); R. O'Neil, Public Regulation and Private Rights of ·Action, 52 Cal.L.Rev. 231 (1964); Note, Implying Civil Remedies From Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963).

Traditionally where there is a right, courts will fashion a remedy. See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Our decision is consistent with this rule in that the addition of implied remedies to express ones in this case will provide the most effective protection for employees' statutory rights.

4. Cases where private civil actions were implied from statutes containing criminal penalties include Burke v. Compania Mexicana de Aviacion, 433 F.2d 1031 (9th Cir. 1970); Common Cause v. Democratic National Committee, 333 F.Supp. 803 (D.C.D.C.1971); Fagot v. Flintkote Co., 305 F.Supp. 407 (E. D.La.1969); Wills v. Trans World Airlines,

pania Mexicana de Aviacion, *supra* note 4, this court held that under § 2 of the National Railway Act an individual discharged for union organizing could bring suit for reinstatement and damages, even though a criminal action by the U.S. attorney was expressly provided in the act. The *Burke* court stated:[5]

In the absence of a clear congressional intent to the contrary, the courts are free to fashion appropriate civil remedies based on the violation of a penal statute where necessary to ensure the full effectiveness of the congressional purpose. See, *e. g.*, Wyandotte Transportation Co. v. United States, 1967, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407; J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423; Texas & Pacific R. Co. v. Rigsby, 1916, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874. Where the interest asserted by the plaintiff is within the class that the statute was intended to protect, the harm of the type the statute was intended to fore-

stall and the statutory criminal penalty inadequate to fully protect the asserted interest, a civil action for damages arises by implication. Wyandotte Transportation Co. v. United States, *supra*.

Based upon the allegations in his complaint, Stewart's interest as an employee is within the class that the statute was intended to protect, and his discharge due to one indebtedness is the type of harm which the statute was intended to forestall. The Appellees do not argue to the contrary. However, the Appellees do assert that there is ample evidence of a clear congressional intent against private actions for civil remedies for § 1674(a) violations, and further that the criminal sanctions and agency enforcement explicitly authorized in Subchapter II of the Act adequately protect Stewart's statutory interest.[6]

Appellees' position that Congress clearly intended *not* to have private civil relief available for § 1674(a) violations is well argued, but unconvincing.[7] First,

---

Inc., 200 F.Supp. 360 (S.D.Cal.1961). Cases where private civil actions were implied from statutes authorizing enforcement by a federal agency include Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. 1970); Fitzgerald v. Pan American Airways, 229 F. 2d 499 (2d Cir. 1956); Fagot, *supra;* Wills, *supra.*

5. Both sides apparently agree that the rationale of *Burke, supra* note 4, at 1033–1034, controls this case. Nevertheless, Appellant also argues that since § 1674(a) is at least partially remedial in nature, it falls within the rule that remedial statutes must be broadly construed to effectuate the purpose of the act in question. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed. 2d 426 (1968); Jordan v. Acacia Mutual Life Insurance Co., 133 U.S.App.D.C. 224, 409 F.2d 1141, cert. denied, 395 U.S. 959, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969); Blau v. Rayette-Faberage, Inc., 389 F.2d 469 (2d Cir. 1968); Wirtz v. Ti Ti Peat Humus Co., 373 F.2d 209 (4th Cir. 1967). However, as the cases cited by Stewart suggest that canon of statutory construction applies when ambiguous statutory language must be applied to the facts of a given case, not when a civil remedy is requested in the *total absence* of any authorizing statutory language.

6. Three district courts outside the Ninth Circuit have used arguments similar to Appellees' while refusing to imply a private civil action for § 1674(a) violations. Western v. Hodgson, 359 F.Supp. 194 (S.D.W.Va.1973); Oldham v. Oldham, 337 F.Supp. 1039 (N.D. Iowa 1972) (court relied upon Jordan v. Montgomery Ward & Co., note 8, *infra*); Simpson v. Sperry Rand Corp., 350 F.Supp. 1057 (W.D.La.1972), vacated, 488 F.2d 450 (5th Cir. 1973). *But see*, Nunn v. City of Paducah, 367 F.Supp. 957 (W.D.Ky.1973) (private party permitted to sue under § 1674).

   Appellees also assert that implied private remedies would be inadvisable here because the amount of damages would be limitless, and there would be no explicit statute of limitations. These arguments have not stopped other courts from implying private remedies under other statutes. Furthermore, the plaintiff's relief may well be limited by his need to mitigate damages, and the doctrine of laches restricts the time in which a suit can be brought.

7. While Appellees do not question the *Burke* rule of allowing implied remedies in the absence of a clear congressional intent *to the contrary*, other courts sometimes fashion civil remedies from federal regulatory stat-

although the passage of § 1674 was influenced by an analogous New York law containing a limited civil remedy for discharges due to "income execution," the absence of such a limited provision in § 1674 indicates at most that Congress did not want a *limited* civil remedy provision. It does not clearly suggest that Congress meant to exclude all private actions for civil relief. Second, Appellees point to a Congressional debate on whether there should be a criminal penalty for § 1674(a) violations as proof that the authors of the statute assumed no civil remedies were to be available. *See* 114 Cong.Rec. 1839 (Feb. 1, 1968). While this debate manifests that Congress regarded criminal penalties as essential to effective enforcement, it does not evince a clear congressional intent to exclude civil remedies, which are not mentioned.

Finally, Appellees assert that because specific and limited civil remedies exist in § 1640 of Subchapter I of the Act, the absence of a similar provision in Subchapter II shows the intent to exclude a private civil remedy for § 1674. In fact, they are urging this Court to apply the doctrine of *expressio unius est exclusio alterius*—the express authorization of a remedy in one section of a statute indicates that an omission of that remedy from other sections was intended by the legislature. While in the past some courts (including this one) have used this rule when denying implied actions under particular statutes,[8]

---

utes only where an *affirmative* intent of Congress to create such private remedies · is manifest. Chavez v. Freshpict Foods, 456 F.2d 890 (10th Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972) (refusal to imply private right of action under the Immigration and Nationality Act, or under the Farm Labor Contractor Registration Act). *See also*, Symposium, *supra* note 3, at 458. However, the rule that rights of actions may be implied in the absence of clear congressional intent to the contrary is well-founded in the law. *See* Wyandotte Co., *supra* note 3, 389 U.S. at 200–201, 88 S.Ct. at 385:

> But our reading of the Act does not lead us to the conclusion that Congress must have intended the statutory remedies and procedures to be exclusive of all others. There is no indication anywhere else—in the legislative history of the Act, in the predecessor statutes, or in nonstatutory law—that Congress might have intended that a party who negligently sinks a vessel should be shielded from personal responsibility. We therefore hold that the remedies and procedures specified by the Act for the enforcement of § 15 were not intended to be exclusive. Applying the principles of our decision in [United States v.] Republic Steel [362 U.S. 482, 80 S.Ct. 884], we conclude that other remedies, including those here sought, are available to the Government.

*See also*, Katz, The Jurisprudence of Remedies, *supra* note 3, at 31–32. Such a rule of congressional intent has the salutary effect of allowing the courts to act when the full effectiveness of a statute might otherwise be in jeopardy. If Congress wishes to preclude judicial consideration of issues concerning the implication of a private action under a

statute, it needs only to say so expressly in the act itself or in the legislative record.

8. *See* T.I.M.E. Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959); Jordan v. Montgomery Ward & Co., 442 F.2d 78 (8th Cir. 1971), cert. denied, 404 U.S. 870, 92 S.Ct. 78, 30 L.Ed.2d 114. Consolidated Freightways v. United Truck Lines, 216 F.2d 543 (9th Cir. 1954), cert. denied, 349 U.S. 905, 75 S.Ct. 582, 99 L.Ed. 1242 (1955). Of course, these cases are distinguishable from the one at hand, and the utilization of the *expressio unius* rule to construe congressional intent in each case was but one argument supporting the court's holding. In *T.I.M.E. Inc.*, the Court held that a shipper of goods by a certified motor carrier could not challenge in post-shipment litigation the reasonableness of the carrier's charges alleged to be violative of the Motor Carrier Act of 1935. The Court's view of congressional intent was buttressed by the fact that proposed statutory amendments on this issue had been defeated in Congress. In *Jordan* the court refused to imply a civil remedy for violation of the credit advertising provisions of the Federal Truth in Lending Act. The court, in *Jordan*, referred to the House Committee Report on the bill, which explicitly stated:

> "'[T]he bill specifically exempts credit advertising from the application of civil penalties. This exemption has been written into the bill by your committee to avoid the possibility that anyone . . . would attempt to seek civil penalties.' U. S.Code Cong. & Admin.News, p. 1976." 442 F.2d, at 81.

Twenty years ago, this court in *Consolidated Freightways* upheld a dismissal of a claim for damages under the Motor Carriers Act

the rule has been criticized.[9] Recently (as recognized by this court's holdings) the tendency is to limit the *expressio unius* rule in favor of construing an act so as to effectuate its dominant purpose.[10]

Appellees also argue that the criminal sanctions of § 1674(b) and the Department of Labor enforcement mandate of § 1676 adequately protect Stewart's statutory interests, citing Breitwieser v. KMS Industries, Inc., 467 F.2d 1391 (5th Cir. 1972). In *Breitwieser*, the Fifth Circuit affirmed a lower court's dismissal of a private action for damages under the Fair Labor Standards Act (FLSA) for the wrongful death of a child. While noting that the FLSA had elaborate criminal provisions which fulfilled the act's purpose and that state law afforded the plaintiff a limited monetary remedy, the court indicated that remedies are implied if no remedy exists, or if the remedy provided is "grossly inadequate."[11] However, in this case, neither the existence of alternative remedies under the same statute or under state law, nor the fact that enforcement of the federal statute is expressly vested in an administrative agency overcomes the need to imply a private right of action for § 1674(a) violations.[12]

■■ Whatever may be the rule of "adequacy" elsewhere, we believe that when there is no clear congressional intent contrary to the implication of private civil remedies, the adequacy of a statute's express remedies (or alternatively, the necessity of implied private ones) must be determined according to whether those express remedies ensure the *full* effectiveness of the congressional purpose underlying the statute. In this sense, when the statute in question seeks to protect an individual's interest, it is not enough for it to have some enforcement mechanisms: the initial question is whether the statute's protection might be enhanced by allowing private civil relief. Of course, "effectiveness" means more than deterrence, and the court must also consider whether implied private remedies might diminish the efficient and fair administration of the statute in question given the complexity of the act, and the interests of those regulated by it.[13]

---

for lack of jurisdiction, using the *expressio unius* rule as one argument. A more compelling reason for the court's ruling was that the claimant had no rights under the Act, but was only a permittee subject to the regulations of the I.C.C. The Court was also influenced by the fact that the violation could generally be brought to the I.C.C.'s attention before any harm would occur to the competitor.

9. *See, e. g.*, Hart & Sacks, The Legal Process 1173–74 (temp. ed. 1958); Note, Implying Civil Remedies, *supra* note 3, at 290.

10. In *Matheson*, *supra* note 3, we explicitly refused to follow the *expressio unius* rule and found that there was an implied right of action for buyers under § 10(b) of the Securities Exchange Act of 1934 even though express remedies were provided for §§ 11 and 12 violations. *See also*, O'Neil, Public Regulation, *supra* note 3, at 259.

11. The *Breitwieser* decision has been criticized. *See* Note, 26 Vand.L.Rev. 867 (1973) wherein the author at 873 argues that the recognition of a private right of action under the act ". . . would have supplemented effectuation of the Congressional policy favoring protection of child labor and would have compensated plaintiffs more satisfactorily."

12. *See* Note, Federal Restrictions of Wage Garnishments: Title III of the Consumer Credit Protection Act, 44 Ind.L.Rev. 267, 278–82 (1968) wherein the author advocates the implication of a private civil remedy for wrongful discharges under § 1674. *See also*, Note, The Implication of a Private Cause of Action Under Title III of the Consumer Credit Protection Act, 47 S.Cal.L.Rev. 383 (1974) wherein the author argues for the courts to recognize a private right of action for debtor-employees as a means of supplementing the Labor Department's enforcement activities. Although it has been asserted that the existence of alternative state remedies lessens the need for implied ones (Note, Implying Civil Remedies, *supra* note 3, at 292–93) and some states do have laws restricting discharges for wage garnishments, the existence of state remedies has not prevented courts from implying private ones under federal statutes. *See* Borak, *supra* note 3; Wills, *supra* note 4.

13. There are, for example, statutes which codify an intricate regulatory scheme of a particular industry, and implying a private civil action may well diminish the statute's full effectiveness because violations may raise highly complex issues requiring a federal agency's understanding of the intricate

■■ In this case, a primary purpose of § 1674(a) is to protect against the hardships and disruptions resulting from employee discharges due to but one garnishment of wages.[14] The administrative and criminal remedies for § 1674 violations do not provide maximum enforcement. The criminal sanctions cover only *wilful* violations: negligent violations are not covered, and proving wilfulness may well be difficult in the context of large corporate employers where the locus of particular decision-making is often elusive. Whatever deterrence § 1674(b) creates, since it does not compensate the jobless and credit-stricken victim, it does not undo the very harm which the statute was intended to forestall. Enforcement by the Department of Labor is also problematic because any action by the Secretary is discretionary, not mandatory.[15]

Furthermore, the implication of a private remedy under this statute will not upset the general administration of Subchapter II of the Act,[16] or unfairly affect the interests of employers. § 1674(a) contains a relatively straightforward mandate covering virtually all employers and employees, and compliance with the statute is hardly onerous since discharges may occur after one garnishment of wages. The issues raised in § 1674(a) claim are simple ones, not requiring special knowledge of the economics or other intricacies of a particular industry or type of employer. To the extent that implying a private action for civil relief causes employers

economic policies underlying the act. *See generally*, Fagot, *supra* note 4, at 413; O'Neil, Public Regulation, *supra* note 3, at 262–63. Violations based on rate-making under a regulatory statute may exemplify such a situation. *Compare* T.I.M.E. Inc. v. United States, *supra* note 8, *with* Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962). *T.I.M.E. Inc.* and *Hewitt-Robins* are distinguishable from the case at hand because there the issue of remedies involved a statutory savings clause; yet in *Hewitt-Robins*, the Court indicated that the test for deciding whether a particular pre-statutory remedy was "inconsistent" with the act and therefore outside the savings clause was "the effect of the exercise of the remedy upon the statutory scheme of regulation." 371 U.S. at 89, 83 S.Ct. at 160. Although a savings clause is not here involved, the court's determination of whether an implied private action would be inconsistent with achieving the full effectiveness of the congressional purpose underlying § 1674(a) accords with the rationale of *Hewitt-Robins*.

14. § 1674 manifests congressional concern over the unscrupulous and unfair use of wage garnishments by creditors. In support of § 1674, Congresswoman Sullivan, Chairman of the House Subcommittee on Consumer Affairs, stated:

What we know from our study of this problem is that in a vast number of cases the debt is a fraudulent one, saddled on a poor ignorant person who is trapped in an easy credit nightmare, in which he is charged double for something he could not pay for even if the proper price was called for, and then hounded into giving up his pound of flesh, and being fired besides. 114 Cong.Rec. H688 (Feb. 1, 1968).

Congress also sought to protect the general public from the adverse effects of discharges for wage garnishments. § 1671(a)(2) states: "The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce."

15. *See* Note, The Implication of a Private Cause of Action, *supra* note 12, at 398. *See also*, Common Cause v. Democratic National Committee, 333 F.Supp. 803, 813 n. 35 (D.C.D.C.1971) (cause of action implied, and Justice Department enforcement said to be inadequate in part because prosecution was within Executive's discretion). Appellant argues that enforcement of § 1674(a) by the Department of Labor is inadequate because of the agency's insufficient manpower and resources; and in its *amicus curiae* brief in the *Simpson* case, *supra* note 6, the Department did advocate allowing private actions under § 1674. *See also*, Note, The Implication of a Private Cause of Action, *supra* note 12, at 399–401. Nevertheless, since evidence of any inability of the Department to carry out its § 1676 mandate was not presented to us in this case, we make no such finding here. Similarly, Appellee cites several cases wherein the Secretary of Labor has brought suit for violations of § 1674; but of course, absent evidence of the number of cases the Secretary *might* have filed, these cases do not indicate how effective an enforcement mechanism § 1676 is.

16. *See* note 13, *supra*.

to be more careful before discharging individuals for one wage garnishment, it serves their own interests as well as those of creditors. As the court in Johnson v. Pike Corp. of America, 332 F.Supp. 490, 496 (C.D.Cal.1971), stated, "Discharging an employee solely because his wages have been garnished once or several times benefits no one; the employer loses an otherwise capable employee and must expend considerable time and effort to train a replacement; the employee loses his source of income and may become dependent upon unemployment compensation or welfare; and the creditor is less likely to recover his claim."

Therefore, the implication of private civil remedies is necessary to ensure the full effectiveness of the congressional purpose behind § 1674(a), and we remand this case to the district court for trial on the merits.[17]

---

17. Because the district court refused to find an implied private civil action for violation of § 1674, it did not consider the nature of relief to which a plaintiff will be entitled if successful on the merits. We reserve ruling on that question until the district court has had an opportunity to consider the appropriate scope of relief in the context of the facts of a particular case.