**John SMEYRES, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, et al., Defendants.**

**No. C85–3949A.**

United States District Court, N.D. Ohio, E.D.

May 5, 1986.

Donald C. Steiner, Canton, Ohio, M. Gary Rosenblithe, Massillon, Ohio, for plaintiff.

John P. Van Abel, Gerald P. Leb, Amerman, Burt & Jones, Canton, Ohio, John M. Newman, Jr., John W. Edwards II, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

This case presents the threshold issue of whether the plaintiff enjoys a private remedy for alleged credit advertising violations, pursuant to 15 U.S.C. § 1664.[1] The plaintiff, John Smeyres, filed this class action against defendants, General Motors Corporation (GMC), General Motors Acceptance Corporation (GMAC), and Family Pontiac, Inc., alleging that GMC and GMAC had been advertising the availability of 7.7% financing for 1985 models of GM vehicles through October 2, 1985 excepting certain stated models. Plaintiff further avers that on August 19, 1985, the plaintiff purchased a 1985 GM model from Family Pontiac, an authorized GMC dealer. Plaintiff claims that the vehicle he purchased was a model not expressly excepted in advertisements announcing the availability of 7.7% financing. Plaintiff claims that, contrary to their advertisement, the defendants did not make 7.7% financing available on the GM model which the plaintiff purchased, ostensibly because it was assembled or manufactured in Canada. According to the plaintiff, he was required to finance his purchase through a bank at a 12.75% rate of interest because of his inability to purchase the 7.7% financing on his vehicle. The plaintiff purports to bring this action as the representative of a putative class consisting of a claimed 100,000 purchasers of GM vehicles who were allegedly denied the advertised 7.7% financing.

Before the Court are the motions of Family Pontiac, GMC, and GMAC to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The plaintiff opposes the motions. For the reasons that follow, the motions are granted and this action is dismissed.

The determinative issue before the Court is whether a private cause of action exists under § 1664 or any of the other Credit Advertising Provisions of the Truth In Lending Act. The statutory section upon which plaintiff bases his claim, 15 U.S.C. § 1664, is a portion of the Credit Advertising Provisions (Part C, which encompasses §§ 1661—1665a inclusive) of the Truth In Lending Act (Act). Part C itself is one of five divisions (Parts A through E) of Subchapter I of the Act (Subchapter I encompasses §§ 1601—1667e inclusive).

Of special interest within Subchapter I is § 1640, which section ostensibly governs civil liability thereunder. Section 1640 explicitly provides for civil liability with re-

---

1. 15 U.S.C. § 1664 provides as follows:
   ADVERTISING OF CREDIT OTHER THAN OPEN END PLANS
   *Exclusion of open end credit plans*
   (a) Except as provided in subsection (b) of this section, this section applies to any advertisement to aid, promote, or assist directly or indirectly any consumer credit sale, loan, or other extension of credit subject to the provisions of this subchapter, other than an open end credit plan.
   *Advertisements of residential real estate*
   (b) The provisions of this section do not apply to advertisements of residential real estate except to the extent that the Board may by regulation require.
   *Rate of finance charge expressed as annual percentage rate*

   (c) If any advertisement to which this section applies states the rate of a finance charge, the advertisement shall state the rate of that charge expressed as an annual percentage rate.
   *Requisite disclosures in advertisement*
   (d) If any advertisement to which this section applies states the amount of the downpayment, if any, the amount of any installment payment, the dollar amount of any finance charge, or the number of installments or the period of repayment, then the advertisement shall state all of the following items:
   (1) The downpayment, if any.
   (2) The terms of repayment.
   (3) The rate of the finance charge expressed as an annual percentage rate.

spect to Parts B, D, and E of Subchapter I, but does not expressly impose civil liability with respect to Part C, and more specifically, with respect to § 1664.[2] Thus, § 1640 clearly does not confer original subject matter jurisdiction in the federal courts over a private individual's allegation of violation of the Credit Advertising Provisions (Part C) of the Act. *See Jordan v. Montgomery Ward & Co.*, 442 F.2d 78 (8th Cir.1971), *cert. denied*, 404 U.S. 870, 92 S.Ct. 78, 30 L.Ed.2d 114 (1971).[3] Moreover, there is no express civil liability provision within Part C of itself.

Plaintiff advances essentially three arguments to support his premise that a private cause of action implicitly exists for violations of § 1664 (Part C), notwithstanding the fact that the civil liabilities section, § 1640, does not specifically provide one, and notwithstanding the fact that Part C itself does not expressly confer any civil remedy. First, plaintiff argues that because § 1665 (a provision within Part C of the Act) expressly excludes owners and personnel of any medium disseminating improper advertisements from liability under Part C, then by inference all non-media entities *are* otherwise subject to liability thereunder. This argument, however, is not well taken. The "liability" which § 1665 speaks of is that which may be imposed pursuant to § 1611. Section 1611 imposes criminal liability on anyone who fails to comply with any requirement of Subchapter I (Parts A through E inclusive).

Second, plaintiff contends that courts have recognized private causes of action for violations of § 1671 of the Act even though no civil remedy is expressly provided for such violations within the Act. *See, e.g., Steward v. Travelers Corporation*, 503 F.2d 108 (9th Cir.1974). Section 1671, however, is within Subchapter II of the Act. Subchapter II contains no civil liability section analogous to § 1640, the civil liabilities section applicable to Subchapter I.[4] Moreover, *Steward* represents a minority viewpoint as to the existence of a private cause of action under § 1671.[5] The Court does not find this contention persuasive on the issue of whether private remedies implicitly exist under Part C (§ 1664) of Subchapter I.

Finally, plaintiff relies upon the four-prong test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for his contention that a private cause of action implicitly exists under § 1664. *Cort* requires analysis of the following questions for determining whether a private right of action is available under a federal statute:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit,

---

**2.** Section 1640 provides that:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirements imposed under this Part [Part B], or Part D or E of this Subchapter [Subchapter I] with respect to any person is liable to such person ...

.    .    .    .    .

(e) Any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of violation.

**3.** Plaintiff asserts that the Eighth Circuit, in deciding the *Jordan* case, improperly relied upon a United States House of Representatives Committee report in determining that Congress did not intend to provide private civil relief for violations of Part C in the Act. Without determining the propriety of any such reliance, this Court notes that the *Jordan* case court expressly relied

on the language of § 1640 in addition to the legislative history behind that section in reaching its decision. *See Jordan*, 442 F.2d at 81. Moreover, *Jordan* involved the single issue of whether a private remedy for alleged Part C violations existed *solely* under § 1640 itself. *Id.* at 82. In *Jordan*, the plaintiff's complaint premised the jurisdiction of the district court *only* upon § 1640. The Court therein was not required to determine whether the existence of a private cause of action is implicit within Part C itself as this Court is called upon to do.

**4.** The *Steward* court itself recognized this very distinction between Subchapters I and I[ of the Act. *Steward*, 503 F.2d at 109 n. 2.

**5.** *See, e.g., McCabe v. Eureka*, 500 F.Supp. 59 (E.D.Mo.1980), *aff'd*, 664 F.2d 680 (8th Cir. 1981); *Smith v. Cotton Brothers Baking Co.*, 609 F.2d 738 (5th Cir.1980), *cert. denied*, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law? ....

*Id.* at 78, 95 S.Ct. at 2088 (emphasis in original) (citations omitted).

In the recent decision of *Howard v. Pierce,* 738 F.2d 722 (6th Cir.1984), the Sixth Circuit addressed the first of the *Cort* factors. Judge Celebrezze, writing for the majority, analyzed at length the question of whether a plaintiff is an intended beneficiary of the statute so as to create or require a federal right in favor of the plaintiff:

> The Supreme Court has been reluctant to imply a cause of action under statutes which create benefits for the general public ... Although the plaintiff may be a member of the public and thus an intended beneficiary of the statute, the likelihood that Congress intended members of the general public to enforce such statutes is not great. In contrast, the inference that Congress intended to create legally enforceable rights is strongest when the statutory language focuses unmistakably on a specific and identifiable class of beneficiaries ... Accordingly, an implied cause of action may be found when language in the pertinent statute expresses an 'unmistakable focus on the benefited class' of which the plaintiff is a member.

*Id.* at 725–26 (citations omitted). An examination of 15 U.S.C. § 1664 fails to disclose any Congressional focus on any identifiable class of beneficiaries. Rather, the benefits of 15 U.S.C. § 1664 accrue to the general public. In sum, the Court finds that the plaintiff is not one of a class for whose "especial benefit" 15 U.S.C. § 1664 was enacted.

Turning to the second question, the Court finds an "indication" of legislative intent to deny a private remedy under Part C of the Act (including § 1664). By its failure to expressly provide for private remedies under Part C of the Act within the civil liabilities section, § 1640, the legislature has implicitly indicated its intent that there be no such private recovery under Part C (including § 1664). *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), is an example of a decision where a finding of the absence of a private remedy was based in part upon the statutory scheme. Justice Rehnquist, writing for the majority, states that

> [f]urther justification for our decision not to imply the private remedy that SIPC and the Trustee seek to establish may be found in the statutory scheme of which § 17(a) is a part. First, § 17(a) is flanked by provisions of the 1934 Act that explicitly grant private causes of action. § 16(b), 15 U.S.C. § 78p(b); § 18(a), 15 U.S.C. § 78r(a). Section 9(e) of the 1934 Act also expressly provides a private right of action. 15 U.S.C. § 78i(e). See also § 20, 15 U.S.C. § 78t. Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.

*Id.* at 571–72, 99 S.Ct. at 2487. Similarly, Congress expressly provided for private remedies for violations of Parts B, D, and E of Subchapter I; had Congress intended a private remedy for violations of Part C, "it knew how to do so," but chose not to.[6]

The Court finds its analysis of the first two *Cort* factors dispositive, *see Touche Ross & Co. v. Redington,* 442 U.S. at 580,

---

6. The Court notes that the House Report, although not dispositive of the issue, lends some support to the conclusion that Congress did not intend a private cause of action in § 1664. The House Report indicates that

> the bill specifically exempts credit advertising from the application of civil penalties. This exemption has been written into the bill by [the] committee to avoid the possibility that anyone, not a party to an actual transaction, seeing an advertisement not complying with the disclosure requirements of the bill would attempt to seek civil penalties.

See H.R.Rep. No. 1040, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Ad. News 1962, 1976.

99 S.Ct. at 2491 (Brennan, J., concurring), and concludes that no private cause of action exists under Part C of Subchapter I of the Truth In Lending Act, including § 1664 within Part C under which plaintiff has sought to maintain this action. Accordingly, the Court grants the motions of the defendants, Family Pontiac, Inc., General Motors Corporation, and General Motors Acceptance Corporation, to dismiss this action pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.