**Walter Monroe SMITH, Plaintiff-Appellant,**

v.

**COTTON BROTHERS BAKING CO., INC., Defendant-Appellee.**

No. 78–1267.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1980.

Daniel E. Broussard, Jr., Alexandria, La., for plaintiff-appellant.

Kullman, Lang, Inman & Bee, Ernest R. Malone, Jr., New Orleans, La., for defendant-appellee.

Before AINSWORTH, INGRAHAM and GARZA, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal arises from a dispute over the circumstances surrounding plaintiff's discharge from employment. The district court, sitting without a jury, held a hearing on November 21, 1977, and found that plaintiff had failed to comply with the court's order entered on March 10, 1977, and, accordingly, dismissed plaintiff's complaint. From a take-nothing judgment in favor of the defendant, plaintiff perfected his appeal to this court. For the reasons hereinafter set out, we affirm.

Defendant Cotton Brothers Baking Co., Inc., was a party to a collective bargaining agreement with Local No. 370, Bakery and Confectionery Workers' International Union, AFL–CIO, which provided, *inter alia*, that employee union members could not be terminated without just cause. Plaintiff Walter Monroe Smith was employed by defendant as an apprentice maintenance mechanic in November 1975. At the time in question, he was a union member in good standing.

Sometime around January 1976, plaintiff's wages were garnished by one of his creditors. Subsequently, on January 31, 1976, plaintiff's employment was terminated. The reasons for his termination were disputed. Defendant claimed that plaintiff's job performance was unsatisfactory after repeated warnings; plaintiff claimed that he was discharged because his wages had been garnished.

On April 1, 1976, plaintiff instituted this action in the district court seeking reinstatement to his former position, reimbursement for lost wages since the time of his discharge, attorney's fees and costs. Plaintiff's complaint included one cause of action for wrongful discharge in violation of the union contract, and a second cause of action for unlawful discharge in violation of Subchapter II of the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1674(a).

During discovery, a question arose as to whether or not plaintiff was a probationary employee, and thus subject to discharge without the protection of the union grievance procedure. One portion of the union

contract purported to allow unilateral termination of plaintiff's employment while other portions appeared to guarantee to plaintiff the security of procedures enjoyed by all union members, including the security of the grievance procedure. The district court found that since the collective bargaining agreement contemplates use of the grievance procedure, and there was an ambiguity in the agreement as to whether plaintiff, an apprentice, enjoyed the rights of other union members, then plaintiff should be referred to the grievance procedure before the the court would rule on the merits of his claim.

On March 10, 1977, the district court entered an order staying its proceedings and granting plaintiff fifteen days in which to file his grievance with the union to determine whether there was just cause for the termination of his employment, and to determine whether he was terminated because of garnishment. The court granted an additional ten days thereafter, or ten days after completion of the grievance proceeding, whichever occurred first, in which to reapply to the court for any further relief.

Plaintiff completed the required written form and personally delivered the signed document to one Lonzo Lee Terrell, the shop steward, whose duty it was to file the grievance with the appropriate company official. It is undisputed that plaintiff timely gave the grievance to Terrell. The dispute centers around whether or not Terrell properly filed the grievance within the time limits set forth in the district court's March 10, 1977 order.

Sometime around July 11, 1977, plaintiff's counsel wrote and requested defendant's position regarding the handling of plaintiff's grievance. Defendant replied that since the grievance had not been given to Jimmy Burgin, the only official in the maintenance department authorized to accept grievances, until April 7, 1977 at the earliest, then it had been untimely filed and would not be processed. Nothing further

occurred until November 11, 1977, when plaintiff again took the matter to the district court.

The district court held a hearing on November 21, 1977, in which several witnesses testified. Plaintiff's sole witness, Terrell, testified that he had attempted to serve the grievance on one Ralph Mingee, a company superintendent. He also testified that he attempted to serve the grievance on one James Paul, a high ranking employee in the maintenance department, who refused to accept it and told Terrell that the grievance had to be given to Jimmy Burgin. All of defendant's witnesses testified that March 26, 1977, was the earliest date that any alleged service attempt could have been made. Moreover, there was testimony that Terrell did not give the grievance to Jimmy Burgin until April 7, 1977. Defendant's witnesses also testified that each one had told Terrell that Burgin was the only person to whom the grievance could be given. There was also testimony that Burgin had been out of the office on April 7th, but had returned on April 8th.

At the conclusion of the hearing, and following oral arguments by counsel, the district court ruled that Terrell, who had been entrusted with the duty of filing the grievance, had failed to so file it within the fifteen day time limit set out by the court in its order. The court then dismissed plaintiff's entire complaint, including his second cause of action under the CCPA, for failure to comply with the March 10, 1977 order.

Plaintiff appeals to this court, arguing that the district court erred in two respects. First, plaintiff argues that the district court's finding of noncompliance with the March 10, 1977 order was clearly erroneous. Second, plaintiff argues that he has a private civil remedy under Subchapter II of the CCPA that is independent of his action under the union contract, and the district court therefore erred in dismissing the entire complaint.[1]

---

1. The district court's order of March 10, 1977 was intended primarily to require plaintiff to resort to the grievance procedure. Arguably,

the language could be read so that plaintiff's claim under Subchapter II of the CCPA may be barred merely because he did not comply with

Plaintiff's first argument is that the loss from any alleged company confusion that may have prevented the grievance from timely reaching the proper company official should not be visited on him. His contention is that he timely filed the grievance. It was the company's delay, in particular, the absence of Jimmy Burgin and the failure of the company to appoint an alternate official to receive grievances, that permitted the time limit to expire prior to the proper official being served with the grievance.

■ The testimony throughout the hearing was conflicting and many of the material dates and facts were disputed. Plaintiff argues that even if the actual service was untimely, the attempt to serve was not. Defendant disputed this contention and several of defendants witnesses testified that to their knowledge no attempt to serve the grievance on a company official was made prior to April 7, 1977. Plaintiff is asking us to disregard all the testimony except that of Terrell, his sole witness, who testified that he did attempt timely to serve the grievance on Ralph Mingee. The district judge had the opportunity to observe the demeanor and candor of the witnesses, and his decision as to the credibility and weight of the testimony must be affirmed absent clear error. We conclude that on the record as a whole the district court finding of noncompliance with its March 10, 1977 order was not clearly erroneous.

In arguing that the district court erred in dismissing his § 1674(a) claim, plaintiff relies heavily on *Stewart v. Travelers Corp.*, 503 F.2d 108 (9th Cir. 1974), which concludes that a private civil remedy is implied in § 1674(a). There is no question that Subchapter II provides no express private civil remedy.[2] However, plaintiff notes that "courts are free to fashion appropriate civil remedies based on the violation of a penal statute where necessary to ensure the full effectiveness of the congressional purpose," *Burke v. Compania Mexicana de Aviacion, S.A.*, 433 F.2d 1031, 1033 (9th Cir. 1970), and he asks us to adopt the Ninth Circuit rule that an implied right of action exists.

■ Neither the Supreme Court nor the Fifth Circuit has spoken definitely on this issue; however, district courts from Louisiana, Iowa, Kansas and West Virginia have ruled that no private right of action exists.[3] Moreover, the language in *Stewart* must now be viewed as modified somewhat by *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That case establishes several factors that are deemed relevant in determining whether a private remedy ought to be implied under a federal statute not expressly providing one. Those factors are 1) whether the plaintiff is a member of the class of persons for whose benefit the statute was enacted; 2) whether the legislature has implicitly or explicitly manifested any intent to create or deny such a remedy; 3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy; and 4) whether the cause of action is traditionally a creature of state law such that inferring a cause of action based solely on federal law would be

---

that order. However, we feel that the order should not be construed so broadly as to preclude consideration of plaintiff's Subchapter II claim. We will therefore decide that claim on its merits.

**2.** The relevant provisions are:

§ **1674. Restriction on discharge from employment by reason of garnishment**
(a) No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.
(b) Whoever willfully violates subsection (a) of this section shall be fined not more than $1,000, or imprisoned not more than one year, or both.

§ **1676. Enforcement by Secretary of Labor**
The Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor, shall enforce the provisions of this subchapter.

**3.** *Western v. Hodgson*, 359 F.Supp. 194 (S.D.W. Va.1973), *aff'd on other grounds*, 494 F.2d 379 (4th Cir. 1974); *Simpson v. Sperry Rand Corp.*, 350 F.Supp. 1057 (W.D.La.1972), *vacated and remanded on other grounds*, 488 F.2d 450 (5th Cir. 1973) (per curiam); *Oldham v. Oldham*, 337 F.Supp. 1039 (N.D.Iowa 1972); *Higgins v. Wilkerson*, 63 Lab. Cas. ¶ 32,379 (D.Kan.1970).

inappropriate. *Id* at 78, 95 S.Ct. at 2087–88, 45 L.Ed.2d at 36. *See Traylor v. Safeway Stores, Inc.*, 402 F.Supp. 871, 875 (N.D.Calif.1975).

Although we believe that no single factor is necessarily more important than any other, a cursory examination of the first three as they apply to the statute at issue leads us to conclude that no private remedy is implied under Subchapter II of the Act.

Congressional concern over the unrestricted garnishment of wages with the resultant disruption in production, employment and consumption brought about in large part by predatory extensions of credit led to the enactment of Subchapter II, CCPA, 15 U.S.C. § 1671, *et seq.* With this legislation Congress also sought to remedy the disparities from state to state in the application of the bankruptcy laws due to the different restrictions on garnishment within each state. *See* H.R. Rep. No. 1040, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, p. 1962. The language of the Act itself provides that "[n]o employer may discharge any *employee* . . . ." 15 U.S.C. § 1674(a) (emphasis added). It seems abundantly clear that plaintiff, an employee of defendant, is a member of the class of persons for whose benefit this subchapter was enacted.

■ Our inspection of the legislative history reveals no specific congressional intent to vest in discharged employees any federal right to damages for unlawful discharge under § 1674(a). "True, in situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." *Cort v. Ash, supra*, 422 U.S. at 82, 95 S.Ct. at 2090 (footnote omitted). An explicit purpose to deny a private cause of action does not appear in the legislative history; however, we take note of the statement of the Committee on Banking and Currency that "[e]nforcement of these provisions [in Subchapter II] is vested in the Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor." H.R. Rep. No. 1040, *supra*, [1968] U.S.Code Cong. & Admin.News at 1978. Moreover, the statute expressly states that the "Secretary of Labor . . . shall enforce the provisions of this subchapter." 15 U.S.C. § 1676. This would appear to be an implicit legislative manifestation to deny a private remedy.

The question of whether the implication of a private remedy is consistent with the underlying purposes of the legislature scheme is less apparent. Clearly, the purpose of the particular section under which plaintiff brought his action is to prevent employee discharge when that discharge is based solely on a garnishment for one single indebtedness. However, on that basis alone, we cannot say that a private remedy for such an unlawful discharge is implicit in the whole scheme. All three subchapters of the CCPA provide for primary enforcement[4] by administrative agencies. *Id.* §§ 1607, 1676, 1681s. However, only Subchapters I and III expressly provide for private civil remedies for non-compliance in addition to the primary administrative remedies. Moreover, those actions are limited in scope and application to their own respective subchapters. *See Oldham v. Oldham*, 337 F.Supp. 1039 (N.D.Iowa 1972).

■ Notwithstanding the overall purpose of the legislative scheme in the CCPA to provide greater debtor protections, we believe that judicially implying a private remedy under Subchapter II would disrupt the administrative procedure set out by Congress for vindication of those federally created rights.

The fourth factor noted in *Cort v. Ash, supra*, might appear to militate in favor of implying a private civil remedy. Although garnishment was traditionally a creature of state law, a cause of action based solely on

---

4. It should be here noted that at no time during this proceeding has plaintiff ever contacted the Wage and Hour Division of the Department of Labor and requested administrative enforcement or assistance under Subchapter II. The machinery for vindication of his rights is there; plaintiff should not now be heard to complain.

the federal law restricting garnishment might not be inappropriate. However, on balance we feel that the other factors are of sufficient weight to convince this court that no private remedy should be implied. We leave it to Congress to provide the additional remedy under Subchapter II that it explicitly provided under Subchapters I and III. For us to undertake that task would be tantamount to judicial legislation, not statutory interpretation.

■ In conclusion, we repeat that the district court finding of noncompliance with its March 10, 1977 order was not clearly erroneous and as such will not be disturbed on this appeal. We also find that there is no implied private civil remedy for a violation of Subchapter II of the CCPA, 15 U.S.C. § 1674(a). Since there is no implied private right of action, plaintiff has asserted no claim for which he may be granted relief; accordingly, the district court did not err when it dismissed plaintiff's entire complaint.[5] The judgment in all respects is correct and is

AFFIRMED.

Brown, Circuit Judge, filed a dissenting opinion.

---

**5.** The district court specifically noted in its order, and we agree, that the dismissal does not prejudice plaintiff insofar as he may have any cause of action against his union for its failure to timely process his grievance. *See Ruzicka v. General Motors Corp.*, 523 F.2d 306, 310 (6th Cir. 1975).