Clarence J. ELLIS

v.

GLOVER & GARDNER CONSTRUCTION COMPANY.

No. 80–3726.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 28, 1983.

heavier than the interests of conferring jurisdiction on this court.

Margaret Behm, Nashville, for plaintiff.

Allen D. Lentz, Nashville, for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

The plaintiff Clarence J. Ellis brought this case pursuant to Sections 1331 and 1337 of Title 28 U.S.C. and the Consumer Credit Protection Act, Title 15 United Code Sections 1671, *et seq.* He is fifty-two years of age and from August 1979 until June 18, 1980, he was employed by the defendant as a laborer/carpenter. On June 18, 1980, Charles R. Gardner, President and owner of the defendant company, received a notice of garnishment of plaintiff's wages. On that date Gardner dismissed the plaintiff because of the garnishment. Ellis' earnings from the defendant company had not been previously garnisheed; therefore, the June 18, 1980 garnishment was for a single indebtedness.

The defendant maintains that it terminated Ellis because of alcoholism, poor job performance, insubordination, and dishonesty. However, the Separation Notice signed

by Charles Gardner and transmitted to the Tennessee Department of Employment Security stated:

This man was discharged do (sic) to his wages being garnishee (sic)—it is a company policy to discharge any employee this happens [to].

On the date that Ellis was terminated, Gardner called him into his office immediately after receiving notice of the garnishment. Ellis was told of the garnishment and was also informed that company policy dictated that any employee receiving a garnishment would be discharged. Defendant introduced no credible evidence to indicate that plaintiff was discharged for any reason other than the garnishment, but the proof does not show that the defendant's actions toward the plaintiff were malicious or in bad faith.

Despite efforts to find work, the plaintiff was unemployed from June 18, 1980 until June 30, 1981. He applied for unemployment benefits with the Tennessee Department of Employment Security on September 22, 1980 and began drawing benefits of $95.00 per week on October 11, 1980. He drew $95.00 a week for twenty-five weeks, and $10.00 on the twenty-sixth week. He sold various items of personal property and liquidated his savings in order to come up with living expenses.

At the time plaintiff was discharged by the defendant, he was being paid $6.00 per hour. Since June 30, 1981, he has held temporary jobs. In the fifty-nine week period between his discharge and the trial of this case, plaintiff's only compensation was unemployment insurance which amounted to $2,385.00. The wages the plaintiff would have earned during that fifty-nine week period amount to $14,160.00.

The plaintiff seeks reinstatement, backpay, and other relief, claiming that his discharge was in violation of 15 U.S.C. § 1674, which contains restrictions on discharge from employment by reason of garnishment. For the reasons that follow, judgment will be entered for the plaintiff.

## I.

■ Defendant argues that the plaintiff's claim must fail because no private right of action exists under Subchapter II of the Consumer Credit Protection Act of 1968 (CCPA), 15 U.S.C. §§ 1671–1677.[1] Subchapter II of the Act pertains to restrictions on garnishment. Section 1674(a) thereof prohibits the discharge of employees whose earnings have become subject to garnishment for a single indebtedness. Pursuant to Section 1676, the Secretary of Labor is given the power to enforce Subchapter II. As there is no express provision for private remedies, unless the statute creates an implied private right of action, the plaintiff will indeed be left solely with an administrative remedy for his employer's alleged violation of Section 1674(a).

The CCPA was enacted on May 29, 1968 after seven years of Congressional hearings on the need for consumer credit protection legislation. Subchapter II reflects Congress' particular concern over the economic hardship and disruptions brought about by the unrestricted garnishment of wages. *See* H.R.Rep. No. 1040, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad. News 1962, 1964 (hereinafter cited as H.R. Rep. No. 1040). The "overall purpose" of the Act is to curb predatory extensions of credit and to "provide greater debtor protections." *Smith v. Cotton Bros. Baking Co.,* 609 F.2d 738, 742 (5th Cir.), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

---

1. The relevant provisions are:
   § 1674. Restriction on discharge from employment by reason of garnishment.
   (a) No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.
   (b) Whoever willfully violates subsection (a) of this section shall be fined not more than

$1,000, or imprisoned not more than one year or both.
§ 1676. Enforcement by Secretary of Labor.
   The Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor, shall enforce the provisions of this subchapter.

Consistent with this underlying purpose, Congress acted in Subchapter II principally not to protect the rights of creditors, but to limit the ills flowing from unrestricted wage garnishments. *Long Island Trust Co. v. U.S. Postal Serv.,* 647 F.2d 336 (2d Cir. 1981). By enacting Subchapter II, Congress sought particularly to prevent consumers from entering bankruptcy. *Kokoszka v. Belford,* 417 U.S. 642, 651, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

> Levels of personal bankruptcies have risen at truly alarming rates. While such bankruptcies were at a level of 18,000 per year in 1950, for the fiscal year ending June 30, 1967, personal bankruptcies had risen to 208,000 .... Testimony and evidence received by [the Committee on Banking and Currency] clearly established a causal connection between harsh garnishment laws and high levels of personal bankruptcies.

H.R.Rep. No. 1040, *supra,* at 1978. In support of Section 1674, Congresswoman Sullivan, Chairperson of the House Subcommittee on Consumer Affairs, stated:

> What we know from our study of this problem is that in a vast number of cases the debt is a fraudulent one, saddled on a poor ignorant person who is trapped in an easy credit nightmare, in which he is charged double for something he could not pay for even if the proper price was called for, and then hounded into giving up his pound of flesh, and being fired besides.

114 Cong.Rec. 1832 (Feb. 1, 1968).

A related problem of concern to Congress, expressed in both the statute itself and the legislative history, involved the disparities among state laws dealing with restrictions on garnishment and the resultant unevenness in the application of the bankruptcy laws. *See* 15 U.S.C. § 1641; H.R. Rep. No. 1040, *supra.* Congress therefore sought to devise a new "national standard ... for the garnishment of wages," 114

Cong.Rec. 1840 (Feb. 1, 1968) (Remarks of Rep. Hanna), that would

> relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families.

H.R.Rep. No. 1040, *supra,* at 1979.

The question whether a private remedy is implicit in Section 1674(a) has not been determined by the Supreme Court and is a matter of conflict between various federal courts. The Court of Appeals for the Ninth Circuit, *Stewart v. Travelers Corp.,* 503 F.2d 108 (9th Cir.1974), decided that the provision does give rise to a private right of action, while the Courts of Appeals for the Fifth Circuit, *Smith v. Cotton Bros. Baking Co.,* 609 F.2d at 743, and the Eighth Circuit, *McCabe v. City of Eureka, Mo.,* 664 F.2d 680 (8th Cir.1981), determined that there can be no private remedy based on Section 1674(a). A district court in Oklahoma has followed the Ninth Circuit decision while district courts in West Virginia, Louisiana, Iowa and Kansas have held that there is no private cause of action.[2]

The Sixth Circuit has at least tacitly recognized a private right of action in remanding for further factual findings an action instituted by a plaintiff who sought reinstatement and other relief for wrongful discharge in violation of 15 U.S.C. §§ 1671, *et seq. Nunn v. City of Paducah,* 71 L.C. § 32,890 (6th Cir.1972). Upon remand, the district court in *Nunn* decided in favor of the plaintiff and denied, citing without discussion *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), a motion to dismiss by the defendant who argued that the plaintiff lacked capacity to bring the action in his own behalf. *Nunn v. City of Paducah,* 72 L.C. ¶ 32,954 (W.D.Ky. 1973). The decision was not again appealed and thus stands, evidently the only case

---

**2.** *Maple v. Citizen's Bank & Trust Co.,* 437 F.Supp. 66 (W.D.Okl.1977); *Western v. Hodgson,* 359 F.Supp. 194 (S.D.W.Va.1973), *aff'd on other grounds,* 494 F.2d 379 (4th Cir.1974); *Simpson v. Sperry Rand Corp.,* 350 F.Supp. 1057 (W.D.La.1972), *vacated on other grounds,* 488 F.2d 450 (5th Cir.1973); *Oldham v. Oldham,* 337 F.Supp. 1039 (N.D.Iowa 1972); *Higgins v. Wilkerson,* 63 L.C. ¶ 32, 379 (D.Kan. 1970).

within this Circuit addressing the question, as a judicial recognition of an implied private right of action under Section 1674(a).

Because of the division of opinion among the federal courts and because the *Nunn* case was decided prior to *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny, this Court has devoted some study to the implication question and finds itself in agreement with those courts holding that there is a private right of action under Section 1674(a).[3]

Under recent Supreme Court cases, the implication of a private right of action is a matter of statutory construction, and judicial inquiry should focus upon the intent of Congress. *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 767, 101 S.Ct. 1451, 1459, 67 L.Ed.2d 662 (1981); *Transamerica,* 444 U.S. at 15, 100 S.Ct. at 245 (1979). The Supreme Court's approach to the question has "changed significantly" with *Cort v. Ash,* which reflected its view that the "increased complexity of federal legislation and the increased volume of federal litigation strongly supported the desirability of a more careful scrutiny of legislative intent." *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982). "The key to this case", therefore, is this Court's "understanding of the intent of Congress" in 1968 when it enacted the consumer credit protection legislation establishing the restriction on garnishment at issue. *Id.*

In *Cort v. Ash,* the Supreme Court set forth four factors relevant to such an inquiry.[4] Since *Cort v. Ash,* the Court has further refined the proper approach making clear that the *Cort* factors should be treated as guidelines only and are not necessarily entitled to equal weight. *See Transamerica,* 444 U.S. at 15, 100 S.Ct. at 245; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–2489, 61 L.Ed.2d 82 (1979); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 741–42, 99 S.Ct. 1946, 1980–1981, 60 L.Ed.2d 560 (1979). The "focus must be on 'the intent of Congress'". *Curran,* 456 U.S. at 377, 102 S.Ct. at 1889 (quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981)). In *Touche Ross,* 422 U.S. at 578, 99 S.Ct. at 2490, stating that the "ultimate question is one of Congressional intent, not one of whether this Court thinks that it can improve on the statutory scheme that Congress enacted into law," the Court observed that in those cases finding an implied remedy the statute either prohibited certain conduct or created federal rights in favor of private parties. *Id.* at 569, 99 S.Ct. at 2485–2486. Since Section 1674(a) of the Act expressly prohibits certain conduct by employers with respect to a particular class of employees, it is clear that the statute falls within the general class of cases in which implied remedies have been found. It remains, then, for this Court to apply the four-part inquiry formulated by the Supreme Court as a guide in determining Congress' intent in enacting § 1674(a).

---

**3.** Since the *Stewart* decision also preceded the Supreme Court's articulation in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), of the factors relevant to the implication of a private right of action, this Court agrees with the decision of the Fifth Circuit that *Stewart* must now be viewed as modified by the *Cort* decision to the extent there is any inconsistency between them. *Smith,* 609 F.2d at 741. This Court finds, however, that even without the benefit of *Cort,* the Ninth Circuit's decision properly considered and weighed the language and purpose of the statute to ascertain Congress' intent, which is the focus of the Supreme Court's decision. *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979).

**4.** The Supreme Court stated in *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted):

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

In considering the threshold question under *Cort,* whether the statute was enacted for the benefit of a special class of which the plaintiff is a member, this Court must look first to the statutory language, and then to the legislative history "and other traditional aids of statutory interpretation." *Middlesex Cty. Sewerage Authority v. National Sea Clammers,* 453 U.S. 1 at 13, 101 S.Ct. 2615 at 2623, 69 L.Ed.2d 435. This question is largely resolved, however, by the language of the statute itself. As the Fifth Circuit observed in *Smith,* 609 F.2d at 742 (emphasis in original), it is "abundantly clear" from the language of § 1674(a), which provides that "[n]o employer may discharge any *employee*", that the "plaintiff, an employee of defendant, is a member of the class of persons for whose benefit this subchapter was enacted."

Where Congress has enacted legislation with an "unmistakable focus" on the benefitted class rather than the public at large, there is more reason to infer a private remedy in favor of the individual class member. *Universities Research,* 450 U.S. at 771–72, 101 S.Ct. at 1461–1462 (citing *Cannon,* 441 U.S. at 690–92, 99 S.Ct. at 1954–1955). Each of the courts that, to this Court's knowledge, have addressed this question found that Congress clearly intended Section 1674(a) to benefit employees subjected to one garnishment. *See Smith,* 609 F.2d at 110; *McCabe v. City of Eureka,* 500 F.Supp. 59, 61 (E.D.Mo.1980), *aff'd,* 664 F.2d at 682; *Simpson v. Sperry Rand Corp.,* 350 F.Supp. at 1059. Clearly, the plaintiff in this case, an employee subjected to garnishment on a single indebtedness, is within the class for whose "especial benefit the statute was enacted." *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088.

In *Cannon,* 441 U.S. at 695, 99 S.Ct. at 1957, the Supreme Court indicated the importance of this special benefit factor, particularly where the legislative history is silent or ambiguous, as it typically will be in implication cases. Like the language of the statute at issue here, the statutory language in *Cannon* "expressly identifie[d] the class Congress intended to benefit," and "contrast[ed] sharply" with that "customarily found in criminal statutes and other laws enacted for the benefit of the general public." 441 U.S. at 690, 99 S.Ct. at 1954. The Court concluded that this first factor "[u]nquestionably" favored the implication of a private cause of action. *Id.* at 693, 99 S.Ct. at 1956.

Although the Supreme Court has never required that a statute explicitly confer a federal right upon the class of which the plaintiff is a member, where such a right is expressly conferred the Court has "consistently .. found that Congress intended to create a cause of action." *Universities Research Ass'n,* 450 U.S. at 771–72, 101 S.Ct. at 1461–1462. There is "far less reason to infer a private remedy in favor of an individual person where Congress rather than drafting the legislation 'with an unmistakable focus on the benefitted class' instead has framed the statute simply as a general prohibition or command to a federal agency." *Id.* (citations omitted).[5] In this case, however, the focus is clearly on a particular class. Subchapter II does not contain a comprehensive administrative enforcement scheme for the protection of the public at large. Nor is the statute framed merely as a general prohibition. *Traylor v. Safeway Stores, Inc.,* 402 F.Supp. 871, 876 (N.D.Cal. 1976). Rather, the prohibition is directed solely to employers of debtors subjected to a single garnishment.

Bearing in mind that the question of Congressional intent remains central, this Court finds that the statute is designed to benefit the particular class of which the plaintiff is a part, an indication that Congress intended

---

**5.** Although there would be less reason to infer a private remedy were the statute not so plainly drafted with a special class in mind, a private remedy could nonetheless be implied on the basis of other relevant factors demonstrating such a Congressional intent. *Cf. Transamerica,* 444 U.S. at 16–18, 100 S.Ct. at 245–

246 (finding an implied cause of action although the statute merely required certain duties of persons for the benefit of the public at large); *Osborn v. American Ass'n of Retired Persons,* 660 F.2d 740, 747 (9th Cir.1981) (Goodwin, J., concurring).

to allow the federal courts to entertain a civil action by such a plaintiff.

The second facet of the *Cort* analysis—and under more recent decisions, the overarching consideration—is whether there is "any indication of legislative intent, explicit or implicit, either to create [a private] remedy or to deny one." 422 U.S. at 78, 95 S.Ct. at 2088. This calls for careful consideration of the legislative history. As the Supreme Court has observed, however, it should come as little surprise if the legislative history of a statute which is silent on the question of a private remedy sheds little light on the subject. *Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956; *Transamerica,* 444 U.S. at 18, 1001 S.Ct. at 246. The *Cannon* Court made clear that the typical absence of express consideration of the matter in such a legislative history does not preclude a determination that Congress intended to imply a private right of action, stating that

> in situations such as the present one "in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." *Cort,* 422 U.S., at 82, 95 S.Ct. at 2090 (emphasis in original).

*Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956. As even those courts relying largely on this second factor to deny a private remedy concede, the legislative history of Section 1674(a) hardly settles the question of what Congress intended. *Smith,* 609 F.2d at 742; *McCabe,* 500 F.Supp. at 61. However, "an explicit purpose to deny a private cause of action does not appear in the legislative history". *Smith,* 609 F.2d at 742. *Accord McCabe,* 664 F.2d at 682.

Congressional debates covered the questions whether to include a limited civil remedy for discharges due to "income execution" and whether to retain a criminal penalty for Section 1674(a) violations in view of the fact that most violators would be corporations, and reveal that the statute was originally to be a blanket prohibition on garnishments. *See* 114 Cong.Rec. 1833–1840 (Feb. 1, 1968). At most, these debates indicate that Congress "did not want a *limited* civil remedy provision"; while they make clear "that Congress regarded criminal penalties as essential to effective enforcement, [they do] not evince a clear congressional intent to exclude civil remedies, which are not mentioned." *Stewart,* 503 F.2d at 111 (emphasis in original). *See also McCabe,* 664 F.2d at 684–85 (Heaney, J., dissenting).

What is clear from the debates is Congress' objective in Section 1674(a): to ameliorate some of the harsh consequences of garnishment upon indebted employees. As a consequence of garnishment,

> the debtor may often find himself unemployed; employers are often unwilling to accept the additional expense of administering garnishments. And, for the same reason that he lost his job initially, the debtor often finds it difficult to secure another position; employers ... are suspicious of persons who have fallen into such undesirable credit positions.

114 Cong.Rec. 1832 (Feb. 1, 1968) (Remarks of Rep. Halpern). In Congress' judgment, the situation was sufficiently serious, "involving the economic welfare of millions of workers throughout the United States," that it required Congressional action prohibiting discharges of employees subjected to garnishment on a single indebtedness. 114 Cong.Rec. 1840 (Feb. 1, 1968). *See also Brennan v. Kroger Co.,* 513 F.2d 961, 963–64 (7th Cir.1975).

There is certainly nothing in these debates to suggest that Congress intended to deny a private remedy for Section 1674 violations. Indeed, a review of the statutory scheme in light of the legislative purpose suggests the contrary. The statute expressly provides a remedy only for *willful* violations, and even then the only relief afforded is the sanction of a fine or imprisonment. 15 U.S.C. § 1674(b). Even that provision is unavailing if the Secretary of Labor elects, in his discretion, not to take any action. 15 U.S.C. § 1676. *See Stewart,* 503 F.2d at 113 n. 15. This Court fails to see how Congress could have intended

that such a narrow remedial provision alone would accomplish the stated purpose of Subchapter II of the Act, that of "reliev[ing] many consumers from the greatest single pressure forcing wage earners into bankruptcies". H.R.Rep. No. 1040, *supra,* at 1963.

Moreover, even when enforced against an employer, the express penalties would do nothing to ameliorate the harm suffered by the discharged employee. *See McCabe,* 664 F.2d at 685 (Heaney, J., dissenting). As the Ninth Circuit in *Stewart,* 503 F.2d at 113 (emphasis in original), observed:

> The administrative and criminal remedies for § 1674 violations do not provide maximum enforcement. The criminal sanctions cover only *wilful* violations: negligent violations are not covered, and proving wilfulness may well be difficult in the context of large corporate employers where the locus of particular decision-making is often elusive. Whatever deterrence § 1674(b) creates, since it does not compensate the jobless and credit-stricken victim, it does not undo the very harm which the statute was intended to forestall.

In view of the clear Congressional aim to provide greater protections to debtors, particularly to those employees singled out in Section 1674(a), this Court finds it hard to believe that Congress' silence on the matter of a private right of action manifests an intent exclusively to allow administrative enforcement, with a limited penal remedy that is triggered solely by willful violations.

On this point, the opinion of Judge Friendly in *Leist v. Simplost,* 638 F.2d 283 (2d Cir.1980), aff'd, sub nom. *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), albeit regarding an entirely different and complex statutory scheme contained in the Commodity Exchange Act (CEA), is nevertheless instructive. The *Leist* Court ascertained a Congressional intent to create an implied private remedy from, *inter alia,* the very failure of the express remedy to provide effective relief for those who were the particular subject of Congress' concern.

Finding it "almost self-evident" that the statute regulated futures trading for the "especial benefit" of futures traders, the Court, 638 F.2d at 306, stated:

> It is true, of course, that the CEA was enacted for the benefit of the entire public, as hopefully most regulatory legislation is. But, as is the case with respect to all such legislation, criminal as well as civil, some classes are more in need of protection than others.

The Court accordingly rejected as "totally unconvincing" the argument that Congress intended the express remedy to be exclusive, finding it "unimaginable" that

> Congress could have meant that the only federal remedies for persons claiming to have been wronged by such defendants to the extent of millions of dollars should be the small solace of having the Government collect civil fines and enforce administrative or criminal penalties.

*Id.* at 312. This Court likewise concludes that there is nothing in the statutory scheme or legislative history of Section 1674(a) to indicate that Congress intended to preclude implication of a private right to action. On the contrary, it would be unreasonable to infer that Congress intended the subchapter's limited enforcement provision to be the sole remedy. *See Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956; *Members of Bridgeport v. City of Bridgeport,* 85 F.R.D. 624, 633 (D.Conn.1980) ("common sense seems to suggest implication of a private right" where administrative termination of funds remedy would not provide relief to "intended beneficiaries of the Act").

This Court is not persuaded by the reasoning of the decisions relied on by the defendant. The Courts in *Smith,* 609 F.2d at 742, and *McCabe,* 500 F.Supp. at 61, aff'd, 664 F.2d at 682, conceding that the legislative history is unclear, nevertheless concluded that because the legislative history "reveals no specific congressional intent to vest in discharged employees any federal right to damages" and Congress vested enforcement power in the Secretary of Labor, "Congress implicitly manifested an intent to deny a private remedy". *McCabe,* 500

F.Supp. at 61 (quoting *Smith,* 609 F.2d at 742). Noting also that the first and third subchapters of the Act contain specific provisions for private remedies, these courts held that no such remedy exists under Subchapter II.

This Court cannot agree with the suggestion that any time a statute is silent as to private remedies but provides for administrative remedies, the courts should infer that Congress intended to deny all private rights of action. The fact that Congress provided for administrative enforcement "does not answer the question of whether private remedies can be implied in addition to the express statutory provisions." *McCabe,* 664 F.2d at 684 (Heaney, J., dissenting). Nor does this Court accept the proposition that any time other sections of a statute contain private remedies, Congress has precluded an implied private remedy under the section in question.

> The fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section .... Rather, the Court has generally avoided this type of "excursion into extrapolation of legislative intent", *Cort v. Ash, supra,* 422 U.S. at 82 n. 14 [95 S.Ct. at 2090], unless there is other, more convincing, evidence that Congress meant to exclude the remedy.

*Cannon,* 441 U.S. at 711, 99 S.Ct. at 1965; *see Ceta Workers' Org. Committee v. City of New York,* 617 F.2d 926, 933 n. 5 (2d Cir.1980).

It is evident from the statutory scheme and legislative history that Subchapter II and the remainder of the CCPA stand in important respects independently from each other. Although there were seven years of hearings on numerous aspects of the need for consumer credit protection legislation, it was not until 1967, the final year before enactment, that the proposals culminating in the second subchapter were formulated, *see* H.R.Rep. No. 1040, *supra,* at 1963, and its effective date was deferred beyond that of the other titles. *Compare* 15 U.S.C. § 1601 and 15 U.S.C. § 1671. *See Brief for the Secretary of Labor as Amicus Curiae,* at 10–11 (hereinafter cited as *amicus brief*). Further, each subchapter is prefaced by its own distinct findings, declaration of purpose and definitions. *E.g.,* §§ 1601, 1671, 1681. *See Brennan v. Kroger Co.,* 513 F.2d at 963–64 (observing in legislative history singular character of garnishment section). The substantive provisions are also entirely different in aim and scope. Subchapter I, unlike the second subchapter, operates against creditors, not employers, requiring full disclosure of credit terms for the benefit of the public at large, not solely for employees subjected to wage garnishment. In its recent decision in *Herman & MacLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548 (1983), the Supreme Court flatly rejected the application of the maxim of statutory construction, *expressio unius est exclusio alterius,* stating that "the maxim cannot properly be applied to a situation *where the remedies redress different misconduct* and where the remedial purposes of the Acts would be undermined by a presumption of exclusivity" (emphasis supplied). As an independent, self-supporting piece of legislation, Subchapter II does not lend itself to the inference that the specific inclusion of a particular remedy in another subchapter necessarily manifests an intent to exclude a similar remedy under Section 1674(a). *See Touche Ross,* 422 U.S. at 572–74, 99 S.Ct. at 2487–88; *McCabe,* 664 F.2d at 685 (Heaney, J., dissenting) ("When the express remedies in other provisions" are not "directed at the same conduct" or "to benefit the same identifiable class", no negative inference for implication should be drawn. To do so would establish a presumption that implied rights are always disfavored").

The defendant argues that *Stewart* and *Maple,* recognizing an implied right of action under § 1674(a), are wrongly decided in view of recent pronouncements of the Supreme Court restricting implication. This Court finds, as have other federal courts, "that the rumors about the death of the implied cause of action ... are exaggerated, at least as far as [concerns] previ-

ously enacted statutes", such as the 1968 Consumer Credit Protection Act. The effect of the recent decisions is "simply to emphasize that the ultimate touchstone is congressional intent and not judicial notions of what would constitute wise policy."[6] *Leist,* 638 F.2d at 316; *see also Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 622 F.2d 216 (6th Cir.1980), *aff'd,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Zeffiro v. First Pennsylvania Banking and Trust Co.,* 623 F.2d 290 (3d Cir. 1980). Indeed, at least four of the recent Supreme Court decisions, *Cannon, Transamerica, Curran* and *Huddleston,* themselves recognized implied private rights of action. This Court considers *Stewart* and *Maple* to have properly focused on the key inquiry as to legislative intent even without the benefit of those recent decisions.[7]

The third element of the *Cort* inquiry is whether the existence of an implied private right would be consistent with the underlying purposes of the legislative scheme. 422 U.S. at 78, 95 S.Ct. at 2088. The considerations indicating that the first two *Cort* factors are satisfied in this case apply with equal force as evidence that implication is entirely consistent with the underlying objectives of the legislation.[8] In *Cannon,* 441 U.S. at 703, 99 S.Ct. at 1961, the Supreme Court expanded upon this third factor stating that

when [a private] remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute.

In this instance, a private remedy would appear to be consistent both with the consumer protection purposes of the Act in general and with Section 1674(a)'s particular purpose of relieving the hardship on debtors subject to a single garnishment. Further, implication of a private remedy on behalf of this plaintiff appears "necessary or at least helpful" to the effectuation of those purposes. *Cannon,* 441 U.S. at 703, 99 S.Ct. at 1961.

In finding an implied private right of action, the *Cannon* Court relied in part upon the opinion of the agency charged with enforcement of the statute in question. In *Cannon,* the Government took the position that because of inadequate agency resources for enforcement, a private remedy was necessary and there was no inconsistency between an administrative and a private remedy. *Id.* 706–08, 99 S.Ct. at 1962–1963.

The defendant has presented nothing to this Court to suggest that a private remedy would in any way interfere with the enforcement function of the Secretary of Labor. In the event of any such showing in the future, a court could stay the proceedings pending consideration by the Depart-

---

**6.** The defendant's argument might also be more convincing if Congress had enacted section 1674(a) subsequent to a decision such as *Touche Ross.* However, as *Touche Ross* directs the judiciary to center its attention on the question of congressional intent, this Court must take into account the legal context, favorable to implication, of Congress' action in 1968. *See Cannon,* 441 U.S. at 710–11, 99 S.Ct. at 1964–1965; *Leist,* 638 F.2d at 316–17 (the period of the 1960's and early 1970's was one in which the Court had consistently found implied remedies). Prior to 1975, the courts found implied private civil remedies from various penal and administrative provisions and the question of congressional intent with respect to Section 1674(a) must be considered against this background. *Curran,* 456 U.S. at 379, 102 S.Ct. at 1839. *See, e.g., J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Burke v. Compania Mexicana de Aviacion,* 433 F.2d 1031 (9th Cir.1970).

**7.** To the extent that there is language in the *Stewart* opinion indicating that that Court was moved by the desirability of implying a private remedy in order to effectuate the aims of § 1674(a), this Court departs from *Stewart.* 503 F.2d at 112. Despite such language, however, this Court believes that *Stewart* rests upon a sound analysis of the statutory scheme and legislative history supporting the conclusion that Congress intended to permit implication of a private right of action.

**8.** Under *Transamerica* and *Touche Ross,* the "first three factors discussed in *Cort*" are the "ones traditionally relied upon in determining legislative intent." *Touche Ross,* 422 U.S. at 78, 95 S.Ct. at 2088; *see Transamerica,* 442 U.S. at 575–76, 99 S.Ct. at 2488–89.

ment of Labor. *See Chicago Mercantile Exchange v. Deaktor,* 414 U.S. 113, 115, 94 S.Ct. 466, 467, 38 L.Ed.2d 344 (1973); *Leist,* 638 F.2d at 321. At present, however, the Department itself maintains that implication is wholly consistent with the statutory purposes. The Secretary stated, *amicus brief* at 1, that:

It is the Secretary's position that recognition of an injured employee's right to maintain a civil action against his employer for violation of Section 304(a) [15 U.S.C. § 1674(a)] is crucial to enforcement of the Act and if employees are not permitted to sue, many of them will, for all practical purposes, be without a remedy.

In support of this position, the Secretary states, *id.* at 9–10, that the Department cannot adequately enforce the section, pointing out that the subchapter

extends to *all* wage earners regardless of the size of the employer or the extent of his involvement in interstate commerce. It has been estimated that the number of discharges because of wage garnishments totals over 250,000 a year. W. Douglas, *Points of Rebellion* (1970), p. 48. Generally each violation will involve only a single employee. Considering the overwhelming enforcement burden already imposed on the Secretary by the Fair Labor Standards and other statutes of major proportions, it would be unreasonable to assume that the Secretary and his limited staff can discover, determine the merits of each individual claim, and prosecute all violations. In any event, the public right envisioned by the Secretary's mandate to enforce [Subchapter II] requires that he give priority to the selection of cases where the relief sought will provide protection for all similarly situated employees of the employer currently and in the future against discharges in violation of Section [1674(a)]—his enforcement will include, but cannot be concerned solely with, a single violation of the private right of any individual em-

ployees. In view of the sheer magnitude of the enforcement burden, the Secretary obviously must concentrate the limited resources available for enforcement on cases that involve the greatest public interest, the highest chance of success, and the most impact in other areas. The unavoidable result is that if employees are unable to sue their employer for violation of Section [1674(a)] they may be, for all practical purposes, left in the position of having a right without remedy. Consequently, "private actions brought for violations of the rule serve as a 'necessary supplement to [government] action'". *Herpich v. Wallace,* 430 F.2d 792, 804 (5th Cir.1970) (quoting *J.I. Case Co. v. Borak,* 377 U.S. [426] at 432 [84 S.Ct. 1555 at 1559, 12 L.Ed.2d 423]).

The Secretary notes, in addition, that under the express terms of the subchapter, "no recourse at all would be available when an employer's action fell short of the criteria of *willful* yet resulted in the discharge of an employee in clear violation of the mandate of Section [1674(a)]". *Id.* at 7.

It is the position of the Department of Labor, therefore, that the vesting of overall enforcement responsibility in the Secretary does not mean that the Secretary *alone* is entitled to seek relief under the Act. The Secretary's responsibility includes, of course, investigations, the issuance of regulations, and referral of criminal prosecutions to the Department of Justice as well as the institution of conciliation proceedings and of civil suits to require the employer to provide reinstatement and back pay. *Amicus brief,* at 8–9; *see also McCabe,* 664 F.2d at 684 n. 1 (Heaney, J., dissenting). In the Secretary's view, had Congress intended the enforcement provision to preclude a private remedy, it would have expressly so provided as it did in Title IV of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 483, which makes suit by the Secretary the "exclusive" post-election remedy for violation of Title IV. *Amicus brief* at 8–9.[9]

---

**9.** Moreover, the Supreme Court has construed even such explicit language to bar only private

initiatory suits, while, absent express language in the Act or legislative history, private inter-

Such a position by the governmental division charged with enforcement of the statute is entitled to substantial deference by the courts. *Cannon,* 441 U.S. at 706–08 & n. 42; 99 S.Ct. at 1962–1963 & n. 42; *Leist,* 638 F.2d at 321; *Curran,* 622 F.2d at 235; *see also Brennan v. Kroger Co.,* 513 F.2d at 965 (Administrator's interpretation of Section 1674 is entitled to great weight and should be followed unless there are compelling reasons indicating it is erroneous).[10] Undoubtedly, a private cause of action would enhance the Secretary's enforcement efforts and thus better effectuate the underlying purposes of Section 1674(a). Mindful that the judiciary's responsibility is to ascertain Congress' intent and not to improve upon its remedial scheme, *Touche Ross,* 442 U.S. at 578, 99 S.Ct. at 2490, this Court concludes that the implication of a private right of action here is supported by its consistency with the ultimate objectives of the legislation.

Although it is unnecessary "to 'trudge through all four of the factors when the dispositive question of legislative intent has been resolved' ", the Court notes that the final factor under *Cort v. Ash* also points toward implication in this case. *Curran,* 456 U.S. at 388, 102 S.Ct. at 1844 (quoting *California v. Sierra Club,* 451 U.S. 287, 302, 101 S.Ct. 1775, 1783, 68 L.Ed.2d 101 (1981) (Rehnquist, J., concurring in the judgment)). One of the purposes of Section 1674(a) in restricting garnishment is to prevent personal bankruptcies. *Kokoszka,* 417 U.S. at 650–51, 94 S.Ct. at 2436. Appearing as a prominent concern in the legislative history of Subchapter II, bankruptcy is a matter for Congressional regulation under Article 1, Section 8, of the Constitution, not a subject traditionally relegated to state law. *See, e.g.,* H.R.Rep. No. 1040, *supra,* at 1963–1979; 114 Cong.Rec. 14383, 14391 (May 22, 1968); *see also* 114 Cong.Rec. 831–34 (Feb. 1, 1968) (Remarks of Rep. Sullivan and Gonzalez); 114 Cong.Rec. 1840 (Remarks of Rep. Hanna). Applying the fourth factor, even the *Smith* Court recognized that "a cause of action based solely on the federal law restricting garnishment might not be inappropriate." 609 F.2d at 742–43. This Court also finds that the fourth consideration "might appear to militate in favor of implying a private remedy," *id.,* reinforcing its conclusion that Congress so intended.

In sum, if it is to be assumed that Congress intends statutory purposes to be reasonably capable of implementation, this Court is persuaded that a Congressional intent to deny a private remedy cannot fairly be inferred. It is clear that Congress' paramount objective in Section 1674(a) was to provide relief for the debtor-employee trapped in "a vicious cycle whereby a man not only loses his salary to pay his debts but loses his job as well, and thereafter can't get himself out of debt to end the garnishment." 114 Cong.Rec. 14392 (May 22, 1968) (Remarks of Rep. Halpern). This Court concludes that in order to effectuate that purpose, Congress intended to permit the implication of a private right of action under Section 1674(a).

II.

[redacted] In order to determine whether the defendant violated Section 1674(a), pursuant to the Sixth Circuit's mandate in *Nunn v. City of Paducah,* 71 L.C. § 32.890, this Court must determine the exact reason for the plaintiff's discharge, keeping in mind that the statute is to be liberally construed and that an employer may find it "easy . . . to rationalize after the event the reasons for the discharge of an employee." The defendant advanced several theories as to why the plaintiff's employment was terminated. The proof shows, however, that while contributing factors may have been present, the plaintiff was fired because of the garnishment. As the plaintiff was sub-

vention would not be similarly barred. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 536, 92 S.Ct. 630, 635, 30 L.Ed.2d 686 (1972).

**10.** The Government points out that the Secretary of Labor's position apparently was not considered by the Fifth Circuit in *Smith. Amicus brief* at 12 & n. 8. The Ninth Circuit in *Stewart,* 503 F.2d at 113 & n. 15, however, took into account the *Amicus brief* filed by the Secretary advocating implication in another case.

jected to garnishment for a single indebtedness, his discharge was unlawful under the terms of Section 1674(a). Based on the evidence introduced at trial and the applicable law, this Court concludes that in firing the plaintiff "by reason of the fact that his earnings [were] subjected to one garnishment for . . . one indebtedness," the defendant violated 15 U.S.C. § 1674(a).

### III.

Just as the Act provides an implied rather than express right of action for a violation of Section 1674(a), so also the particular nature of the relief afforded must be ascertained by implication. *See, e.g., Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 390–91, 90 S.Ct. 616, 624–625, 24 L.Ed.2d 593 (1970). The plaintiff seeks reinstatement to his job, back pay in the amount of $13,110.00 as of August 18, 1981, and additional back pay as of the date of this decision. He also claims actual punitive damages and attorney's fees.

Decisions relating to the matter of relief under Section 1674(a) are few in number. Upon remand, the district court in *Nunn v. City of Paducah,* 367 F.Supp. at 958, held that the plaintiff would be entitled to the equitable relief of reinstatement but not back pay or other damages because he did not demand such relief in a timely manner. Without deciding the issue, the Court stated that had the demand for such relief been timely, "there would have been posed to the Court the very serious question as to whether such relief would have been available." *Id.* The Court noted, however, that "under other statutes, where reinstatement has been ordered, usually back wages follow as a matter of course, subject to credits for wages and other benefits received in other capacities during the period the employee was wrongfully discharged." *Id.*

In determining whether the plaintiff was entitled to a jury trial of her claim for money damages under Section 1674(a), the Court in *Maple,* 437 F.Supp. at 70, had to determine "whether the rights and remedies created by 15 U.S.C. § 1674(a) are legal or equitable in nature." Finding that a private action for a violation of the statute "sounds in tort", the Court held that the plaintiff's request for money damages, "including actual damages for loss of past and future earnings", based on the alleged tort was a legal claim appropriate for jury trial. The Court thus recognized that legal relief is implicitly available under Section 1674(a), and expressly left open the possibility that the plaintiff might join equitable claims in the action. *Id.* at 70 & n. 15.

■ It appears to this Court that under Section 1674(a) reinstatement is implicitly available to the private plaintiff and that back pay should follow as a matter of course. The administrative remedies used by the Secretary of Labor to enforce Section 1674(a) include civil actions to compel the employer to reinstate a discharged employee and to pay back pay. *See McCabe,* 664 F.2d at 684 (Heaney, J., dissenting). Moreover, the very considerations leading this Court to conclude that Congress intended to allow suits by private individuals indicate that Congress intended reinstatement and backpay to be available in order to make wrongfully discharged members of the protected class whole.

In the field of employment discrimination, by way of analogy, reinstatement and back pay are required in order to make the plaintiff whole for past injuries suffered as a result of the unlawful discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372–2373, 45 L.Ed.2d 280 (1975); *see* "Special Project, Back Pay in Employment Discrimination Cases", 35 *Vanderbilt Law Rev.* 893, 993 (1982). The employment discrimination cases under Title VII are instructive because, in the face of rather vague statutory language, the courts have had to develop a standard of discretion that will effectuate the legislation's purposes.[11] The Supreme Court in *Albemarle,* 422 U.S. at 416, 95 S.Ct. at 2371, stated that in deciding whether to award back pay, the court's discretion must be exercised in accordance with the "larger objectives of the Act":

"[G]iven a finding of unlawful discrimination, *back pay should be denied only*

11. The statute provides, for example, that where the court finds an intentional violation,

"the court may enjoin the respondent from

*for reasons which if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."*

422 U.S. at 421, 95 S.Ct. at 2373 (emphasis supplied). To deny reinstatement and back pay in the instant case would appear, to this Court, unjustifiable in light of Section 1674(a)'s central purpose of protecting a particular class of debtor-employees from discharge by reason of garnishment. Certainly, in this context as much as in employment discrimination, "back pay is an integral part of making the plaintiff whole." *Stinson v. Tennessee Dept. of Mental Health,* 553 F.Supp. 454, 474 (M.D.Tenn. 1982) (citing *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)). Accordingly, the defendant will be required to reinstate the plaintiff and provide him with back pay.

The general formula for the computation of back pay under Title VII, 42 U.S.C. § 2000e–5(g), modeled on a similar provision in the National Labor Relations Act designed to make employees whole for losses suffered because of unfair labor practices, 29 U.S.C. § 160(c), provides the plaintiff with a sum equal to the earnings he would have received but for the unlawful action, less "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." As a reasoned approach to the proper measure of damages, the application of this formula would be equally appropriate under Section 1674(a). Therefore, a hearing will be set for the purpose of determining in accordance with this general approach the amount of the back pay award.

█ As the proof does not show that in discharging the plaintiff the defendant acted with malice or in bad faith, there is no basis in fact for an award of punitive damages in this case. Hence, the Court does not reach the question of whether there is any basis in law for such an award.

engaging in such unlawful employment practice, and order such affirmative action as may

█ Finally, as to attorney's fees, the well-established general rule is that absent a binding contractual or express statutory authorization, attorney's fees are not recoverable by a successful litigant. *Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–1946, 36 L.Ed.2d 702 (1973); *Grinnell Bros., Inc. v. Touche Ross,* 655 F.2d 725, 726 (6th Cir. 1980). Neither a statute nor a contract provides for such an award in this case. Further, as there are no extraordinary circumstances calling for the allowance of attorney's fees in order to do justice between these parties, an exercise of the Court's equitable power to make such an award is not warranted. *Grinnell,* 655 F.2d at 726–27; *Baldwin v. Burger Chef Systems, Inc.,* 507 F.2d 841, 842 (6th Cir.1974). *Cf. Mills v. Electric Auto-Lite Co.,* 396 U.S. at 391–92, 90 S.Ct. at 625.

Accordingly, the Court finds that the defendant is liable to the plaintiff for discharging him in violation of Section 1674(a) and the plaintiff is entitled to reinstatement and back pay. An appropriate ORDER will enter.

be appropriate." 42 U.S.C. § 2000e–5(g) (1976).